25 F.3d 610
 Prod.Liab.Rep. (CCH) P 13,887
Bernard BARONE, an individual; Highland Country Club;
Plaintiffs-Appellants;
v.
RICH BROS. INTERSTATE DISPLAY FIREWORKS CO., a South Dakota
corporation; The People's Republic of China, a foreign
corporation; China National Native Produce & Animal
By-Products Import & Export Corporation, a Chinese
corporation; Defendants;
Hosoya Fireworks Co., Ltd., a foreign corporation;
Defendant-Appellee.
 No. 93-1833.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1993.
Decided May 24, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied July 13, 1994.
 
 Michael G. Goodman, Omaha, NE, argued (Dan H. Ketcham, on the brief) for appellant.
 Lyman L. Larsen, Omaha, NE, argued (David J. Schmitt, on the brief), for appellee.
 Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HEANEY, Senior Circuit Judge.
 
 
 1
 Bernard Barone was injured when a fireworks display he was helping to set up went awry. Barone and his employer, the Highland Country Club of Omaha, Nebraska, (collectively "Barone") sued the distributor which had sold Highland the fireworks, Rich Bros. Interstate Display Fireworks Co. of Sioux Falls, South Dakota, and two manufacturers of fireworks, one of which is Hosoya Fireworks Co. of Tokyo, Japan.[1] Hosoya moved to dismiss for lack of personal jurisdiction, and the district court granted that motion. The district court refused to certify the question for appeal under 28 U.S.C. Sec. 1292(b), however, so Barone agreed to the dismissal of Rich Bros. without prejudice, thereby paving the way for a final judgment, which Barone has now appealed to this court.
 
 
 2
 * The only facts of any significance are those that might be termed jurisdictional, i.e., those facts that would support the exercise of jurisdiction over Hosoya in the state of Nebraska. We note initially that Hosoya has no office in Nebraska, no agent for service of process, no distributor. It does not advertise in Nebraska, nor does it directly send any of its products into Nebraska. Its products are sold into Nebraska, however, as the facts of this case demonstrate, and it is the process by which those products arrive in Nebraska (and elsewhere throughout the United States) that concerns us in this background section.
 
 
 3
 Hosoya sells fireworks throughout the United States and elsewhere.[2] During the years 1983-88 (the years immediately preceding the accident, which occurred on July 4, 1988), Hosoya utilized nine distributors in six states (California, Indiana, Missouri, Ohio, Pennsylvania, and South Dakota). Those nine American distributors annually purchased between a quarter of a million and a million dollars worth of fireworks (averaging $640,000 annually over the six-year period), which constituted between fifty-one and ninety-two percent (averaging just over seventy percent) of Hosoya's fireworks business.
 
 
 4
 Rich Bros. purchased just over $600,000 worth of fireworks from Hosoya during this period, averaging just over $100,000 annually. Michael Rich, president of Rich Bros., informs us that sixteen percent of the fireworks purchased from Hosoya were eventually resold into Nebraska, which totals approximately $100,000 worth of fireworks over the six-year period, or $16,000 annually.
 
 
 5
 Rich Bros. is not a roadside fireworks distributor, although a related company does distribute fireworks in that manner, but instead sells its fireworks displays through its six regional salesmen and through a catalog by mail. The six salesmen are located in Nebraska, Iowa, North Dakota, Montana, and South Dakota. The fireworks displays sold by Rich Bros. are intended for use by municipalities or organizations that put on fireworks displays. Many of its catalogs are sent, for example, to small town fire departments because its experience has been that those institutions are often responsible for the fireworks displays at various community celebrations.
 
 
 6
 Business was conducted between Hosoya and Rich Bros. in the following fashion: Hosoya would send price lists, purchase terms, and shipping information to Rich Bros. Hosoya also provided Rich Bros. with proof of compliance with various federal regulations. Although Hosoya disputes this, Rich informs us by affidavit that representatives of Hosoya visited him in his office in Sioux Falls for the purpose of soliciting the purchase of their fireworks.
 
 II
 
 7
 We review dismissals for lack of personal jurisdiction de novo, and, like the district court, we simply look to the nonmoving party to make a prima facie showing of jurisdiction. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir.1991). Nebraska has construed its long-arm statute to confer jurisdiction to the limits of due process, see Keith v. Freiberg, 492 F.Supp. 65, 66-67 (D.Neb.) (citing Stucky v. Stucky, 185 N.W.2d 656 (Neb.1971)), aff'd, 621 F.2d 318 (8th Cir.1980), so our familiar two-part analysis in diversity cases of whether the forum state's long-arm statute is satisfied and, if so, whether the exercise of jurisdiction comports with due process, collapses into the single question of whether due process would be violated by the exercise of jurisdiction over Hosoya in this case. Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir.1991). The necessary analysis may further be delineated by noting that this case requires us to take another look at a type of specific jurisdiction (as opposed to general jurisdiction, see Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir.1993)), that has been labeled "stream of commerce." See Wines v. Lake Havasu Boat Mfg., Inc., 846 F.2d 40, 43 (8th Cir.1988).
 
 
 8
 Barone directs us to a Seventh Circuit decision, Giotis v. Apollo of the Ozarks, Inc., 800 F.2d 660 (7th Cir.1986), cert. denied, 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987), that appears to be on all fours with the case before us. In that case, Giotis was injured at a Fourth of July party in Wisconsin by fireworks that had been brought to the party by a Minnesotan, who had in turn purchased the fireworks by mail from a national distributor, Capitol Fireworks Company. (We note that fireworks were illegal in both Minnesota and Wisconsin at the time, but this apparently was no impediment to Capitol, which shipped the fireworks to a Minnesota address.)
 
 
 9
 The fireworks in question had been purchased by Capitol from either Apollo, a Missouri corporation with retail outlets in Missouri, or Red Rocket, a Missouri corporation with offices in Missouri and Louisiana. Red Rocket and Apollo distributed fireworks into ten and fifteen different states, respectively, but neither distributed fireworks into Wisconsin. There was no evidence in the record that either was aware of the scope of Capitol's sales efforts, see id. at 672 (Barker, J., concurring and dissenting), but the court nonetheless found that jurisdiction over both Red Rocket and Apollo comported with due process.
 
 
 10
 The due process clause requires that there be "minimum contacts" between the nonresident defendant and the forum state before the latter may exercise jurisdiction over the former. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).
 
 
 11
 Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's "reasonable anticipation," there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
 
 
 12
 Soo Line, 950 F.2d at 528-29 (citations and internal quotation marks omitted).
 
 
 13
 The Giotis court held that when a seller, such as either Apollo or Red Rocket, heads a distribution network, thus "realiz[ing] the much greater economic benefit of multiple sales in distant forums, of which the purchase by the particular buyer who has brought suit is merely one example," its activities in that role may "satisfy the purposeful availment test" and it may therefore be sued by an injured buyer in the buyer's forum. 800 F.2d at 667. Although
 
 
 14
 [s]uch a seller, because of intervening levels of distribution, may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, ... the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so. A seller at the head of a distribution network thus satisfies the requisite foreseeability of due process where it "delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers in the forum state."
 
 
 15
 Id. (quoting Burger King v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985), which in turn quoted World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. at 567-68). Apollo and Red Rocket were such sellers, in the Giotis court's opinion, in that they "derived the same economic benefits from Capitol's wide scope of sales efforts as Capitol did," and there was "no evidence that [they] were unaware of this scope." Id. at 668.
 
 
 16
 Applying the Giotis decision to this case is quick work,[3] if it represents the applicable law. Hosoya certainly benefited from the distribution efforts of Rich Bros., and although Hosoya claims to have had no actual knowledge that Rich Bros. distributed fireworks into Nebraska, such ignorance defies reason and could aptly be labeled "willful."[4] South Dakota is not a particularly populous state; Sioux Falls is conveniently located within short distance of three other states, and the very name of the distributor is "Rich Bros. Interstate Display Fireworks Co." In addition, the location of Hosoya's distributors suggests an effort to reach much of the country through a limited number of regional distributors. If Hosoya's two Missouri distributors and its Ohio distributor similarly distribute Hosoya's fireworks on a regional scale, which it is fair to assume they do, Hosoya has managed to cover the Midwest rather successfully, and it is difficult to imagine that such strategically placed distributors would be chosen merely by chance. Rather, it is evidence of Hosoya's efforts to place its products in the stream of commerce throughout the Midwest and other parts of the country as well.
 
 
 17
 The question remains whether the Giotis court's holding is available to us as persuasive precedent in this circuit. Hosoya argues that two intervening decisions, one by the Supreme Court and a subsequent one by this court, suggest to the contrary. As we shall explain, we disagree.
 
 
 18
 The Supreme Court most recently examined the "stream of commerce" theory of personal jurisdiction in Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Our court applied the Asahi court's holding in Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369 (8th Cir.1990). These cases involved similar, though not identical, facts. In both cases, a manufacturer of a component part sold that part to another company which in turn sold its final product into the forum state. In Asahi, these sales into the forum state were of significant quantity and continued for several years, while in Falkirk the sale was a single occurrence. In both cases the ultimate consumers were injured, allegedly due to defects in the component parts, and sued the component part manufacturers in the states in which the injuries occurred.
 
 
 19
 The plaintiff in Asahi eventually settled his suit, but the action for indemnity between the Taiwanese company that sold the final product into California and the Japanese company that manufactured the allegedly defective component part remained to be litigated. The Supreme Court eventually held that the exercise of personal jurisdiction over the component manufacturer in a California state court did not comport with due process because it was unreasonable to subject the Japanese company to suit in California when neither the plaintiff nor the forum state had any significant interest in the outcome and when it would place a severe burden on the Japanese company. Asahi, 480 U.S. at 114, 107 S.Ct. at 1033. The Court split badly on the question of whether the Japanese company had sufficient contacts with the forum state, with four justices indicating that it did not, id. 480 U.S. at 112, 107 S.Ct. at 1032 (opinion of O'Connor, J.), four justices indicating that it did, id. 480 U.S. at 117, 107 S.Ct. at 1034-35 (opinion of Brennan, J.), and three justices indicating that, although it was unnecessary to reach the question, they believed that "a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment' even though the item delivered to the forum State was a standard product marketed throughout the world." Id. 480 U.S. at 122, 107 S.Ct. at 1037 (opinion of Stevens, J.).
 
 
 20
 In short, Asahi stands for no more than that it is unreasonable to adjudicate third-party litigation between two foreign companies in this country absent consent by the nonresident defendant. Should one engage in vote counting, which we are loath to do, it appears that five justices agreed that continuous placement of a significant number of products into the stream of commerce with knowledge that the product would be distributed into the forum state represents sufficient minimum contacts to satisfy due process. In doing so, those justices simply followed the Court's earlier statement in World-Wide Volkswagen that when a manufacturer or distributor attempts to serve a market "directly or indirectly ..., it is not unreasonable to subject it to suit in [that market] if its allegedly defective merchandise has there been the source of injury to its owner or to others." 444 U.S. at 297, 100 S.Ct. at 567. In any event, the Asahi decision cannot be held to undermine the holding in Giotis. See Dehmlow v. Austin Fireworks, 963 F.2d 941, 946 (7th Cir.1992) ("Because the Supreme Court established the stream of commerce theory, and a majority of the court has not yet rejected it, we consider that theory to be determinative."); cf. Boit v. Gar-Tec, 967 F.2d 671, 682-83 (1st Cir.1992) (holding that Asahi did not undermine an earlier First Circuit decision that limited the stream of commerce theory).
 
 
 21
 This court's decision in Falkirk is similarly distinguishable from the facts of this case. There a single component part manufactured by the defendant was incorporated by a third party into a piece of equipment sold to the plaintiff in the forum state.[5] No evidence was presented indicating that the defendant either knew or should have known that its component part would end up in the forum state, nor was there evidence that the defendant had availed itself in any way of the benefits of the laws of the forum state. See Falkirk, 906 F.2d at 375. Were the facts in this case precisely like those in Giotis, i.e., had someone purchased Hosoya's products from Rich Bros. and taken those fireworks to a state that was outside of Rich Bros. and Hosoya's distribution scheme where the fireworks then caused injury to a third party--Falkirk might well preclude jurisdiction, for in both cases the contacts with the forum state would be attenuated, random, or fortuitous, see Burger King, 471 U.S. at 475, 105 S.Ct. at 2183-84; but in this case the defendant poured its products into regional distributors throughout the country, and now would have this court believe that it had no idea its products were being distributed into neighboring states.
 
 
 22
 Hosoya has reaped the benefits of its network of distributors, and it is only reasonable and just that it should now be held accountable in the forum of the plaintiff's choice (as long as that choice of forum comports with due process, which we believe it does). More than reasonable foreseeability is at stake here, as it must be under existing case law, see Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir.1982), for Hosoya has purposefully reaped the benefits not only of South Dakota's laws, but of Nebraska's as well.
 
 
 23
 Having found both Asahi and Falkirk factually distinguishable from the instant case and being persuaded of the correctness of the Seventh Circuit's analysis and its applicability to this case, we adopt the reasoning in Giotis and find Hosoya subject to personal jurisdiction in Nebraska for purposes of this suit.
 
 III
 
 24
 In McGee v. International Life Insurance Co., 355 U.S. 220, 222-23, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), the Supreme Court recognized that
 
 
 25
 [t]oday many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.
 
 
 26
 In World-Wide Volkswagen, the Court noted that these "historical developments ... have only accelerated in the generation since [McGee ] was decided." 444 U.S. at 293, 100 S.Ct. at 565. Although a generation has not quite passed since World-Wide Volkswagen was decided, the acceleration in the internationalization of commerce is apparent. In this age of NAFTA and GATT, one can expect further globalization of commerce, and it is only reasonable for companies that distribute allegedly defective products through regional distributors in this country to anticipate being haled into court by plaintiffs in their home states. Accordingly, we reverse the district court's finding that Hosoya is not subject to personal jurisdiction in Nebraska for purposes of this suit and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 The other manufacturer, The People's Republic of China, doing business as the China National Native Produce and Animal By-Products Import and Export Corporation, ("China National") was never properly served, and was therefore dismissed from the case. Barone v. Rich Bros. Interstate Display Fireworks Co., No. 8:CV88-810 (D.Neb. May 10, 1993). Hosoya argues that the uncertainty over who actually manufactured the offending firework precludes jurisdiction, but we disagree. Barone need not prove that Hosoya has committed a tort in Nebraska; he need simply establish a prima facie cause of action. Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir.1990). All we need decide is whether, given the allegation that either Hosoya or China National manufactured the offending firework, Nebraska could exercise personal jurisdiction over Hosoya consistent with due process. Id
 
 
 [2]
 Hosoya argues that many of the documents on which Barone relies were not properly before the district court because Barone failed to file them in compliance with a local rule. We find this argument unavailing for a number of reasons. First, "the district court has considerable leeway in the application of its local rules. Indeed, it is for the district court to determine what departures from its rules may be overlooked." Silberstein v. IRS, 16 F.3d 858, 860 (8th Cir.1994) (citations, internal quotation marks, and alteration omitted). If this argument was presented to the district court (and we can find no evidence that it was), that court apparently rejected the argument when it indicated that it had "considered the briefs and evidence submitted by the parties." Barone v. Rich Bros. Interstate Display Fireworks Co., No. 8:CV88-00810, slip op. at 1 (D.Neb. Oct. 29, 1992). If the court considered evidence that was improperly filed, it was within its discretion to do so, both under our precedents and under Local Rule 50 (allowing modification of the rules to avoid injustice). Second, as noted earlier, we find no evidence that Hosoya raised this argument to the district court. Hosoya cannot be heard to raise a violation of the lower court's local rules for the first time on appeal. Jaroma v. Massey, 873 F.2d 17, 22 (1st Cir.1989)
 
 
 [3]
 The facts in this case actually provide greater support for a finding of personal jurisdiction than did the facts in Giotis because in that case the fireworks were sold into Minnesota and were then taken by the purchaser into Wisconsin, where the injury occurred. Had the injury occurred in Minnesota (and the suit been filed there) the facts would more closely mirror those of this case
 
 
 [4]
 The Fifth Circuit's explanation of the insignificance of this distinction in the context of personal jurisdiction bears repeating:
 The traditional equivalence between "know" and "should have known" in our jurisprudence suggests that, for purposes relevant to this case, it is a distinction that makes no difference. The ultimate test of in personam jurisdiction is "reasonableness" and "fairness" and "traditional notions of fair play and substantial justice," [International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ]. In applying such a test, it is a matter of common sense that there should be no distinction between "know" and "should have known." We cannot say that a potential defendant who actually knows his products will ultimately reach the forum state any more "purposefully avails itself of the privilege of conducting activities [there]", Hanson v. Denckla, 357 U.S. [235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) ], than a potential defendant who merely should have known.
 Oswalt v. Scripto, Inc., 616 F.2d 191, 200-01 (5th Cir.1980) (emphasis in original) (footnotes omitted). One district court opinion suggests that the Supreme Court overruled Oswalt and similar progeny of World-Wide Volkswagen in Asahi Metal Indus. Co. v. Superior Ct. of Calif., 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). See Bond v. Octagon Process, Inc., 745 F.Supp. 710, 714-15 (M.D.Ga.1990), aff'd, 926 F.2d 1573 (11th Cir.) (per curiam), cert. denied, 501 U.S. 1232, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991). As we discuss in the text infra, a plurality of the Court in Asahi indicated its desire to limit this line of cases, but Justice O'Connor failed to muster a majority on that issue. Neither the Fifth Circuit nor the Eleventh Circuit has explicitly abrogated Oswalt, nor has the Ninth Circuit overruled its similar decision in Hedrick v. Daiko Shoji Co., 715 F.2d 1355 (9th Cir.1983). See Western Helicopters, Inc. v. Rogerson Aircraft Corp., 715 F.Supp. 1486, 1490 (D.Or.1989) (Although Justice O'Connor's plurality opinion in Asahi disapproved of the Hedrick approach, that opinion did not command a majority of the Court; "[t]herefore, Hedrick has not been overruled and remains the controlling case law in the Ninth Circuit.").
 
 
 [5]
 The defendant had one other contact with the forum state, but it was unrelated to the dispute and therefore irrelevant to the consideration of whether the forum state could exercise specific jurisdiction over the defendant. See Falkirk, 906 F.2d at 374