685 So.2d 1156 (1996)
AMERICAN VALVE MANUFACTURING COMPANY and Federal Insurance Company, Plaintiffs-Appellants,
v.
VALVO INDUSTRIA ING RIZZIO, aka Vir S.p.A. and L'Abeille Assicurazioni, Defendants-Appellees.
Dennis W. MOORE, et al Plaintiffs-Appellants
v.
CRYSTAL OIL COMPANY, et al Defendants-Appellees.
Nos. 28942-CA, 28943-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
Writ Denied March 7, 1997.
*1158 Mayer, Smith & Roberts by Deborah Shea Baukman and Steven E. Soileau, and James E. Franklin, Jr., Shreveport, for Plaintiffs-Appellants.
Barlow & Hardtner by Joseph L. Shea, Jr. and Jonathan D. Baughman, Shreveport, for Defendants-Appellees.
Before MARVIN, NORRIS and GASKINS, JJ.
NORRIS, Judge.
American Valve Manufacturing Co. and its insurer, Federal Insurance Co. (hereinafter "AV"), appeal a judgment sustaining the declinatory exception of lack of personal jurisdiction filed by Valvo Industria Ing Rizzio, a/k/a VIR SpA and its insurer, L'Abeille Assicurazioni ("VIR"), and dismissing VIR from two lawsuits.[1] For the reasons expressed, we reverse and remand.

Factual and procedural background
The tort suit (No. 28,943-CA) began when Dennis Moore was welding legs to a barrel at a compressor station owned by Crystal Oil near Shongaloo. A valve on a nearby metal pipe failed, allowing oil and gas to gush in Moore's direction. His torch ignited the fuel and by the time the fire was contained Moore had sustained burns to 56½% of his body. He sued, inter alia, Crystal, the owner of the station; CBC Supply, the vendor from whom Crystal had bought the valve; Specialty Warehouse, the distributor from whom CBC had bought the valve; and AV, which allegedly "designed, assembled, constructed and manufactured" the valve. Some time later, AV and its insurer third-partied VIR for indemnification or contribution, alleging that VIR designed and manufactured the valve that failed. Moore also joined VIR as a defendant but has not yet attempted service.
AV subsequently filed a second suit (No. 28,942-CA) against VIR, praying for the same relief, indemnification or contribution. In both petitions AV obtained long-arm service by alleging that VIR was "a foreign corporation doing business in Louisiana within the meaning of La. R.S. 13:3201 et seq."
VIR filed several exceptions, including the declinatory exception of lack of personal jurisdiction. VIR and AV argued the exception at a hearing in January 1996. In addition to the argument, two exhibits were submitted.
The first exhibit was the affidavit of Dott. Savino Rizzio, the managing director of VIR. He attested that VIR has a manufacturing facility in northern Italy, but no employees, agents or offices in Louisiana; no direct sales to any buyers here; no advertising, solicitation, or channels for communicating with customers here; and no registration or license in Louisiana, Texas, Arkansas or Mississippi. He also averred that VIR manufactures no product with the intent of marketing it in Louisiana.
The second exhibit was the deposition of Mr. Frederick L. Guterman, the president of AV until 1990. He described in detail the sales chain between VIR, AV and its ultimate buyers. AV manufactured various sizes of valves, but the 2½" bronze ball-model valve that exploded at Crystal's station was cast by VIR in Italy. AV had provided all the specifications for the casting, including the marking "WOG" (meaning the valve was suitable for use in water, oil and gas pipelines), and sold the valve as its own product; however, VIR had actually cast and finished the *1159 valves. AV bought these and other components from VIR with the oral understanding from Dr. Rizzio that the products were being sold to no one else in the United States; the exclusive distributorship lasted from the inception of the parties' dealings until AV filed Chapter 11 bankruptcy in 1986. AV had the 2½ valves shipped to its factory in New York, tested them, then distributed them to a system of wholesalers (Mr. Guterman also called them distributors) which covered 48 states. Mr. Guterman thought that most of AV's distributors sold directly to the enduser, but admitted that additional middlemen could be involved. He knew that AV's products could go to any state. He further testified that VIR's products made up only 5-10% of AV's total sales, and they sold at most 1,000 of VIR's 2½ valves ($10,000 in sales) in any given year. From AV's standpoint, the valve at issue was not an "isolated" sale in Louisiana. Dep., 27. Mr. Guterman also testified that although VIR representatives had on several occasions attended trade shows in the United States, VIR probably did not understand AV's American distribution system. He confirmed Dr. Rizzio's assertion that VIR never sold directly to a distributor or end-user in the United States.
The District Court ruled from the bench that VIR did not have sufficient minimum contacts with Louisiana for the court to exercise jurisdiction over the company. R.p. 45.

Applicable law
The Due Process clause of the Fourteenth Amendment requires that in order for a state court to exercise jurisdiction over a nonresident defendant, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Due process also requires that the nonresident defendant be amenable to service of process under the state's long-arm statute. See, e.g., McBead Drilling Co. v. Kremco Ltd., 509 So.2d 429 (La.1987), describing the "dual analysis." However, since a 1987 amendment to Louisiana's long-arm statute, R.S. 13:3201 B[2] is specifically coextensive with the federal due process clause and the "dual analysis" resolves to a single test of whether the defendant's contacts with the state satisfy minimum contacts and fundamental fairness. See de Reyes v. Marine Management & Consulting Ltd., 586 So.2d 103 (La. 1991); Dalton v. R & W Marine Inc., 897 F.2d 1359 (5th Cir.1990).
For purposes of due process, "minimum contacts" must arise from actions by which the nonresident defendant purposefully avails itself of the privilege of conducting business activities within the forum state, thus invoking the benefits and protections of its laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The forum state may assert personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state and those products subsequently injure consumers there.[3]World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298, 100 S.Ct. 559, 567-568, 62 L.Ed.2d 490 (1980).
The expectation or foreseeability contemplated by the Supreme Court turns on whether the defendant's conduct and connection with the forum state are such that it "should reasonably anticipate being haled into court there." Id.; de Reyes, 586 So.2d at 106.
The exact dimensions of the "stream of commerce" theory for establishing minimum contacts are somewhat unsettled. In Asahi *1160 Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987), the Supreme Court's most recent ruling on the subject, the justices evenly split on whether any placement of the product into the stream of commerce would suffice to create minimum contacts,[4] or whether such placement alone would not suffice absent some "additional conduct" by the defendant to support personal jurisdiction.[5] The latter position is referred to as the "stream of commerce plus" theory. The court ultimately decided the case on the issue of fundamental fairness, and the Louisiana Supreme Court has not explicitly adopted either the "stream of commerce" or "stream of commerce plus" theory as its preferred test for establishing minimum contacts.[6]
Once the court finds minimum contacts, a presumption arises that jurisdiction is reasonable and the burden of proof shifts to the defendant to make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." de Reyes, 586 So.2d at 106, quoting from Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2185. This issue, called the "fundamental fairness test," examines (1) the defendant's burden, (2) the forum state's interests in adjudicating the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the state's shared interest in furthering fundamental social policies. Asahi Metal, 480 U.S. at 112, 107 S.Ct. at 1032; Ruston Gas Turbines Inc. v. Donaldson Co., 9 F.3d 415, 421 (5th Cir. 1993). A strong showing of fundamental fairness may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2184; Teknika Electronics Corp. v. Satellite Earth Stations of La., 95-663 (La.App. 3d Cir. 4/17/96), 673 So.2d 1129, writ denied 96-1268 (La. 6/28/96), 675 So.2d 1125.
When the jurisdictional issue is submitted on documentary evidence, the burden on the non-moving party is relatively slight and all reasonable inferences from the record are to be drawn in favor of the non-moving party, i.e., in favor of the finding of jurisdiction. de Reyes, supra at 109, and citations therein.

Discussion: Minimum contacts
By its first assignment of error AV argues that it established minimum contacts sufficient to make a prima facie case for the exercise of personal jurisdiction over VIR. In support it argues that although VIR had no offices, agents, or personal contacts in Louisiana, it utilized AV as an exclusive distributor for its products in the United States; transacting with a U.S. distributor should place VIR on reasonable notice that its products could find their way into any state. It contends that such facts were found sufficient to find jurisdiction (and to reverse the District Courts' denials thereof) in Oswalt v. Scripto Inc., 616 F.2d 191 (5th Cir.1980), and Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610 (8th Cir.1994). AV notes the conceptual distinction between exercising jurisdiction over a nonresident distributor whose limited territory does not include the state where the tort occurred, versus a nonresident manufacturer, whose product is intended for general distribution. See World-Wide Volkswagen, 444 U.S. at 295, 100 S.Ct. at 566; McBead Drilling Co., 509 So.2d at 431-432. It therefore distinguishes recent cases in which Louisiana courts declined to exercise jurisdiction over regional distributors. Hunt v. Schult Homes Corp., 94-1592 (La.App. 3d Cir. 5/3/95), 657 So.2d 124; Langley v. Oxford Chemicals, *1161 Inc., 25,596 (La.App.2d Cir. 3/30/94), 634 So.2d 950; J. Wilton Jones Co. v. Touche Ross & Co., 556 So.2d 67 (La.App. 4th Cir. 1989). It concludes that VIR, by agreeing to produce and sell to AV a unique product of multiple applications, including the transport of natural gas, should have reasonably foreseen that its product would likely be distributed without limitation to states such as Louisiana, one of the country's major producers and transporters of natural gas.
The strength of AV's case is by no means overwhelming but as the nonmoving party it is entitled to all reasonable inferences in favor of finding jurisdiction. de Reyes, 586 So.2d at 109. The instant record preponderates to establish minimum contacts. It is critical that for over 22 years VIR sold valves to AV on a regular, albeit small-scale, basis; the valves were designed for a wide range of applications (water, oil and gas); and VIR sold them with the oral understanding that AV, until its bankruptcy, would be its only U.S. purchaser. VIR placed no restrictions on AV's right to distribute its valves anywhere in the United States. These facts satisfy, in our view, the requirement that the nonresident corporation "deliver its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen, 444 U.S. at 297-298, 100 S.Ct. at 567. Through its conduct, VIR should have known that it was benefiting from the Louisiana market and thus should have anticipated that it could be haled into court here. Barone v. Rich Bros., supra.
Naturally there are countervailing facts which have been ably argued in VIR's brief. In addition to the obvious absence of offices, agents or sales representatives in the state, there is the alleged absence of any "marketing effort" on VIR's part to make sales here and the limited size of VIR's exports to AV. While these facts are significant, we find they do not overcome the showing of foreseeability that is based on VIR's long history of selling versatile products to an exclusive distributor in the United States. The thrust of the jurisprudence is that personal jurisdiction may be exercised over a "seller at the head of a distribution network" who, by virtue of his business structure, does not have his own agents or offices in the forum state. Burger King, 471 U.S. at 473, 105 S.Ct. at 2182; Barone v. Rich Bros., 25 F.3d at 613.
VIR further argues that its exclusive distributorship with AV has been exaggerated and misconstrued, and that in fact AV sought out and solicited VIR's business, not vice versa, thus undermining the contention that VIR "purposefully availed" itself of the forum. Admittedly these facts are significant. While we agree that the circumstances surrounding VIR's initial entry into the market two decades ago might not be called "purposeful availment," we find that 20 years' continuous transactions involving this product and this distributor can be so called.
In short, AV's showing preponderates to establish that minimum contacts existed between VIR and Louisiana, based on VIR's placement of its products into the stream of commerce, the reasonable foreseeability that those products would reach the state, and the imputed purposeful availment of this state's market through a long history of sales.

Fundamental fairness
With the finding of minimum contacts, we turn to the issue of fundamental fairness; a showing that the exercise of jurisdiction would be unfair to the nonresident defendant will defeat a prima facie case for its exercise, while a strong showing that it would not be fundamentally unfair will assist a weak prima facie case of minimum contacts. Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2184; Teknika Electronics Corp., supra. We consider the evidence in light of the factors listed in Asahi, 480 U.S. at 113, 107 S.Ct. at 1033.
The burden on VIR in having to come from Valduggia, Italy to Minden, Louisiana to defend this case is considerable. However, in McGee v. International Life Ins. Co., 355 U.S. 220, 223-223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), the Supreme Court stated:
[T]oday many commercial transactions touch two or more States and may involve *1162 parties separated by a full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.
The developments noted in McGee have progressed to international proportions. Barone v. Rich Bros., 25 F.3d at 615. VIR's local counsel conceded at the argument of the exception that minimum contacts might exist in AV's domicile of Coxsackie, New York. R.p. 33. The additional burden of sending a company representative, if necessary, to Louisiana instead of New York is, in our view, only marginal.
The other factors weigh heavily in favor of the exercise of jurisdiction in Louisiana. This state has an obvious and undeniable interest in litigating an action based on a personal injury that occurred in the state. Ruston Gas Turbines, 9 F.3d at 421; Bean Dredging Corp. v. Dredge Technology Corp., 744 F.2d 1081 1085 (5th Cir.1984). The plaintiff in the tort suit is a resident of the state and can conveniently litigate his claim here, as several of the parties and presumably most of the witnesses are located here. Because AV may contend that any defect lay not in the valve's design by AV, R.S. 9:2800.56, but in its manufacture by VIR, R.S. 9:2800.55, effective relief for Moore may depend on his ability to join all defendants in the same proceeding. The continued presence of the injured party and various local interests in this litigation distinguishes the case from the situation presented in Asahi, supra. Finally, judicial economy counsels against piecemeal litigation of incidental claims in various forum states; a single and uniform resolution of the case is in the interest of all states which may arguably assert jurisdiction.
For these reasons we find that the fundamental fairness analysis strongly supports the exercise of jurisdiction by the Louisiana court, and enhances the mild yet preponderant showing of minimum contacts.

Conclusion
The orders sustaining VIR's exceptions of lack of personal jurisdiction and dismissing VIR from the suits consolidated in this appeal are reversed and the cases remanded for further proceedings. Costs of appeal are assessed to the appellees, VIR and L'Abeille Assicurazioni.
REVERSED AND REMANDED.
NOTES
[1] The suits were consolidated for purposes of appellate argument only.
[2] R.S. 13:3201 B, added by La. Acts 1987, No. 418, provides: "In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States."
[3] This formulation is one of "specific jurisdiction," which is distinguished from "general jurisdiction." The latter applies when the court exercises jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum state. See Burger King Corp., supra at n. 15; de Reyes, supra at 105. The instant case is one of specific jurisdiction, although the test is essentially the same for both types of jurisdiction. de Reyes, supra at 109.
[4] This was the position of Justices Brennan, White, Marshall and Blackmun.
[5] This was the position of Justices O'Connor, Rehnquist, Powell and Scalia. Justice Stevens did not take a position on the issue.
[6] In Fox v. Board of Supervisors, 576 So.2d 978 (La. 1991), and Superior Supply Co. v. Associated Pipe & Supply Co., 515 So.2d 790 (La. 1987), the court stated, "The plurality opinion reasoned that the defendant's conduct must be more purposefully directed at the forum than the mere placing of the product in the stream of commerce." In the most recent case, de Reyes, the court's analysis of minimum contacts makes no mention of Asahi Metal.