Trinette M. JONES, and Admiral
Pointe, LP, Plaintiffs,

v.

BOTO COMPANY LIMITED,
and Wal–Mart Stores,
Inc., Defendants.

Action No. 4:07cv45.

United States District Court,
E.D. Virginia,
Newport News Division.

July 17, 2007.

James Long Chapman, IV, Shawn Ashley Voyles, Crenshaw Ware & Martin PLC, Norfolk, VA, Mark Elliot Utke, Cozen O'Connor, Philadelphia, PA, for Plaintiffs.

Stacy Leann Haney, Travis Aaron Sabalewski, Reed Smith LLP, Richmond, VA, Stephen Todd Fowler, Reed Smith LLP, Falls Church, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Trinette M. Jones ("Jones") and Admiral Pointe, LP ("Admiral Pointe"), bring this product liability action seeking to recover monetary compensation for property damage that occurred as a result of a fire allegedly caused by an artificial Christmas tree that was manufactured by defendant Boto Company Limited ("Boto") in either Hong Kong or the People's Republic of China ("PRC"), imported into this country by Wal–Mart Stores, Inc. ("Wal–Mart"), and purchased by Jones at a retail store operated by Wal–Mart in the Commonwealth of Virginia. This matter comes before the court on Boto's motion to dismiss for lack of personal jurisdiction, filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Boto's motion to dismiss is **DENIED.**

### I. Factual and Procedural History [1]

■ On November 19, 2005, Jones, a resident of Virginia, purchased a fiber op-

---

1. Where, as here, a district court rules on a motion under Rule 12(b)(2) on the basis of the complaint, the motion papers, and the supporting memoranda, without conducting an evidentiary hearing or deferring its ruling until the receipt of evidence at trial, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). The facts listed below reflect

tic Christmas tree from a retail store operated by Wal–Mart in Virginia. On December 9, 2005, a fire started at her residence when the tree, which was manufactured by Boto, malfunctioned. The fire destroyed property belonging to her and Admiral Pointe, the owner of the residential apartment building in which she resided. Admiral Pointe is an entity organized under the laws of Virginia, with its principal place of business in North Carolina.

Boto is a foreign corporation doing business in Hong Kong. The Carlyle Group, which is headquartered in Washington, D.C., owns approximately a seventy-five percent share of the company. Boto manufactures artificial Christmas trees and other festive products at facilities in Hong Kong and PRC. It does not have a distribution system for sales to the United States. Rather, Boto negotiates sales contracts in Hong Kong or PRC with its customers, which include Wal–Mart, the United States' largest retailer, and Target Corporation. Pursuant to the terms of these contracts, Boto arranges for products to be loaded on shipping carriers in Hong Kong or PRC ports. From this point on, the product is under the control of the customer, and Boto has no further control over any of its products beyond these ports.

Boto sells about $1.1 billion in artificial trees on an annual basis.[2] Most of these artificial trees are ultimately purchased by consumers in the United States. Boto operates an Internet website that is accessible throughout the United States. Although Boto does not sell products directly to consumers through this website, the website provides information about its products that is intended for use by both its customers and the consumers who ultimately purchase its products. Consumers can access product manuals, a list of frequently asked questions, warranty information, and information regarding maintenance and replacement of Boto's products. Consumers can also complete warranty registration forms on the website. Boto's warranty services are valid only in the United States and its territories.

Boto is not authorized to do business in Virginia and, although its website is accessible in Virginia, it has no physical presence here. None of its employees, representatives, or agents are, or ever have been, in Virginia. In addition, none of Boto's customers has its principal place of business in Virginia.

On or about March 12, 2007, the plaintiffs filed a complaint against Boto in the Circuit Court for the City of Newport News, Virginia, seeking monetary compensation for the property damage that occurred as a result of the fire on December 9, 2005. The plaintiffs served Boto on May 3, 2007, and Boto removed this action to this court on May 29, 2007. In their complaint, the plaintiffs assert claims of negligence, breach of express warranties, and breach of implied warranties.

On June 7, 2007, Boto filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The motion to dismiss was accompanied by a supporting memorandum. On June 12, 2007, the plaintiffs filed an amended complaint. *See*

the court's application of this standard to the various submissions of the parties.

**2.** This dollar amount is taken from a magazine article that was submitted to the court by the plaintiffs. *See* Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss, Ex. E. At this early stage of the litigation, the plaintiffs have not had an opportunity to obtain accurate and detailed revenue data from Boto through discovery, and the court must draw all inferences in favor of the plaintiffs at this juncture. *See supra* note 1.

FED.R.CIV.P. 15(a) (explaining that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served"); *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1068 n. 1 (4th Cir.1993) ("A motion to dismiss is not a responsive pleading for the purposes of Rule 15(a)."). The only difference between the amended complaint and the original complaint is that the amended complaint adds Wal–Mart as a defendant and sets forth claims of negligence, breach of express warranties, and breach of implied warranties against Wal–Mart.[3] On June 18, 2007, the court received the plaintiffs' memorandum in opposition to Boto's motion to dismiss. Numerous exhibits are attached to the memorandum. On June 27, 2007, Boto filed a motion to dismiss the plaintiffs' amended complaint for lack of personal jurisdiction. This second motion to dismiss simply incorporates the arguments made in support of the original motion to dismiss and does not set forth any new arguments.[4] As the time for Boto to file a reply to the plaintiffs' memorandum in opposition has now expired, the matter is ripe for review.

## II. Standard of Review

When a defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the jurisdictional question is for the judge to decide, and the plaintiff ultimately has the burden to prove by a preponderance of the evidence that the exercise of personal jurisdiction over the defendant is proper. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir.1997). When a district court rules on such a motion without conducting an evidentiary hearing or deferring its ruling until the receipt of evidence at trial, the plaintiff only has the burden to make a prima facie showing that the exercise of personal jurisdiction over the defendant is proper. *Id.* In determining whether the plaintiff has made the requisite showing, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).[5]

## III. Analysis

To determine whether the exercise of personal jurisdiction over a defendant is proper, a district court must consider two issues. First, the court must consider whether the exercise of personal jurisdiction over the defendant is authorized by the forum state's long-arm statute. *Chisholm v. UHP Projects, Inc.*, 1 F.Supp.2d 581, 584 (E.D.Va.1998). Second, if the re-

---

**3.** Wal–Mart had not been served with the amended complaint as of the date of this Memorandum Opinion and Order.

**4.** As to Boto, the amended complaint filed by the plaintiffs is essentially identical to the original complaint. Boto was not "required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476 (1990). Thus, the court will treat both

Boto's first motion to dismiss, filed June 7, 2007, and its second motion to dismiss, filed June 27, 2007, as being directed to the plaintiffs' amended complaint. The ruling herein applies to both of Boto's motions to dismiss.

**5.** If a plaintiff makes a prima facie showing, this does not settle the issue, as the plaintiff must eventually prove by a preponderance of the evidence that the assertion of personal jurisdiction over the defendant is proper either at the trial or at an evidentiary hearing. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005).

quirements of the long-arm statute are satisfied, the court must then ask whether the exercise of personal jurisdiction over the defendant comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.*[6]

## A.

The plaintiffs argue that the assertion of personal jurisdiction over Boto is authorized by sections 8.01–328.1(A)(3) and 8.01–328.1(A)(4) of the Code of Virginia. Section 8.01–328.1(A)(3) authorizes the exercise of personal jurisdiction over a defendant "as to a cause of action arising from the person's ... [clausing tortious injury by an act or omission in this Commonwealth]." Section 8.01–328.1(A)(4), in turn, authorizes the exercise of personal jurisdiction over a defendant "as to a cause of action arising from the person's ... [c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persis-tent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth."

■ At a threshold level, the court notes that the plaintiffs have not alleged that the injury forming the basis for this civil action occurred as a result of any act or omission of Boto in Virginia. Thus, it is clear that Boto did not cause a tortious injury "by an act or omission in this Commonwealth." Va.Code Ann. § 8.01–328.1(A)(3); *see DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 425–26 (E.D.Va.1996) (noting that section 8.01–328.1(A)(3) "requires that an out-of-state defendant be physically present in Virginia when committing the act or omission giving rise to the tort at issue").[7] Accordingly, this court may not exercise jurisdiction over Boto pursuant to section 8.01–328.1(A)(3).

■ Section 8.01–328.1(A)(4), on the other hand, authorizes the exercise of per-

---

**6.** The reach of Virginia's long-arm statute extends to the outermost boundaries of the Due Process Clause. *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir.2002). Thus, in determining whether the exercise of personal jurisdiction over a defendant is proper, courts generally decline to address whether the requirements of Virginia's long-arm statute are met, focusing instead solely on whether the exercise of personal jurisdiction over the defendant comports with the requirements of the Due Process Clause. *Compare id.* (noting that there is no need to conduct two separate inquiries), *and Lockwood Bros., Inc. v. Arnold Speditions GmbH,* 453 F.Supp.2d 928, 933 (E.D.Va.2006) (explaining that "this court need only consider whether exercising personal jurisdiction over the defendant would offend due process"), *with New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir.2005) (stating that a court should first determine whether Virginia's long-arm statute authorizes the exercise of jurisdiction over the defendant and then consider the requirements of the

Due Process Clause of the Fourteenth Amendment), *and Chisholm,* 1 F.Supp.2d at 584–87 (considering separately the requirements of Virginia's long-arm statute and the Due Process Clause). In this case, because the parties briefed both issues, the court deems it appropriate to address both whether the exercise of personal jurisdiction over Boto is authorized by Virginia's long-arm statute and whether the exercise of such jurisdiction comports with the requirements of the Due Process Clause.

**7.** The fact that Boto maintains an Internet website that is accessible in Virginia is not relevant to the issue of whether the requirements of the long-arm statute are satisfied, as there has been no allegation that this lawsuit has any connection with the website. *See* Va.Code Ann. § 8. 01–328.1(A)(3) ("A court may exercise personal jurisdiction over a person ... *as to a cause of action arising* from the person's ... [c]ausing tortious injury by an act or omission in this Commonwealth." (emphasis added)).

sonal jurisdiction over Boto. In their amended complaint, the plaintiffs assert, among other things, a negligence claim against Boto, alleging that the property damage sustained by them was caused by Boto's negligent act of placing a defective product into the stream of commerce. Pls.' Am. Compl. ¶ 14(a). Thus, the plaintiffs have alleged that acts or omissions outside of Virginia caused a tortious injury within Virginia. In addition, the plaintiffs have come forward with information indicating that Boto sells over $1.1 billion in artificial trees on an annual basis, that most of these artificial trees are ultimately purchased by consumers in the United States, and that its customers include Wal–Mart and Target Corporation, two of the United States' largest retailers. Of course, without discovery, the plaintiffs cannot ascertain precisely what proportion of Boto's revenue is derived from sales to consumers in Virginia. However, given the ubiquitous presence of retail stores operated by Wal–Mart and Target Corporation throughout the United States and in Virginia, specifically, and the large amount of revenue that Boto allegedly derives annually from consumers in this country, the court deems the plaintiffs' showing sufficient to establish a prima facie showing that Boto "derives substantial revenue from goods used or consumed . . . in this Commonwealth." VA.CODE ANN. § 8.01–328.1(A)(4). Accordingly, the plaintiffs have made a prima facie showing that Virginia's long-arm statute authorizes the exercise of personal jurisdiction over Boto. See Ajax Realty Corp. v. J.F. Zook, Inc., 493 F.2d 818, 821–22 (4th Cir.1972) (concluding that $37,000 constituted "substantial revenue" within the meaning of a prior version of Virginia's long-arm statute, even though this amount represented only one-half of one percent of total sales).

## B.

Having determined that Virginia's long-arm statute authorizes the exercise of personal jurisdiction over Boto, the court must next turn to the issue of whether the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. To resolve this issue, the court must engage in a two-step inquiry. The court must first ask whether Boto has the minimum contacts with Virginia necessary to confer jurisdiction. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 944–45 (4th Cir.1994). If so, the court must then consider whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice." *Id.* at 945.

## 1.

■ Because this case arises from a foreign entity's placement of products into "the stream of commerce," this court's minimum contacts analysis must start with an examination of *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi*, a resident of California was injured because he lost control of a motorcycle after its rear tire exploded. *See id.* at 105–06, 107 S.Ct. 1026. The resident sued, *inter alia*, the manufacturer of the tire's tube, a Taiwanese company, which, in turn, sought indemnification from Asahi Metal Industry Co., Ltd. ("Asahi"), a Japanese company that manufactured the tube's valve assembly. *Id.* at 106, 107 S.Ct. 1026. Although all of Asahi's sales to the tube manufacturer were directed from Japan to Taiwan, it knew that its valve assemblies would ultimately be sold, as components of motorcycles, to consumers in California. *Id.* at 106–07, 107 S.Ct. 1026. The issue before the Court was whether a California court's exercise of personal jurisdiction over Asahi comported

with the requirements of the Due Process Clause. *Id.* at 108, 107 S.Ct. 1026.

The Court's efforts to resolve the issue of whether Asahi had the minimum contacts with California necessary to confer jurisdiction resulted in three opinions, none of which garnered support from a majority of the Court. In an opinion joined by three other justices, Justice O'Connor explained that the minimum contacts necessary to confer jurisdiction must come from actions purposefully directed toward the forum state. *Id.* at 112, 107 S.Ct. 1026. Justice O'Connor reasoned that, without more, the mere placement of a product into the stream of commerce is not an act purposefully directed toward a forum state, even when the defendant is aware that the product will ultimately enter the forum state. *Id.* Justice O'Connor indicated that the following *additional* conduct might show an intent to serve the forum state: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

By contrast, in an opinion joined by three other justices, Justice Brennan concluded that "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause" and that no showing of additional conduct is required. *Id.* at 117, 107 S.Ct. 1026. Finally, Justice Stevens, in an opinion joined by two justices who had also joined Justice Brennan's opinion, reasoned that an examination of minimum contacts was not necessary to decide the case because the exercise of jurisdiction over Asahi would offend tradition notions of fair play and justice, regardless of whether the minimum contacts necessary to confer ju-

risdiction were present. *Id.* at 121, 107 S.Ct. 1026. Justice Stevens disagreed, however, with Justice O'Connor's implicit assumption that an "unwavering line" could be drawn between mere awareness that a product will find its way into a forum state and the purposeful direction of acts toward the forum state. *Id.* at 122, 107 S.Ct. 1026. Justice Stevens explained that "[i]n most circumstances I would be inclined to conclude that a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years" would be sufficient to establish the minimum contacts necessary to confer jurisdiction. *Id.*

Circuits have split on the issue of which *Asahi* opinion sets forth the correct test for determining whether a defendant has the minimum contacts necessary to confer jurisdiction. *See Lesnick*, 35 F.3d at 946 n. 1 (listing cases). Although the Fourth Circuit has rejected Justice Brennan's stream of commerce theory of personal jurisdiction, it has not explicitly adopted the approach set forth by Justice O'Connor or the approach suggested by Justice Stevens. *See id.* at 945 ("To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism."); *Federal Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 660 (4th Cir.1989) (suggesting that the " 'stream of commerce' theory of personal jurisdiction" might apply when the additional conduct listed by Justice O'Connor is present, but noting that it was not deciding whether it would adopt the approach suggested by Justice Stevens in an appropriate case). Instead, based on its analysis of *Asahi* and other Supreme Court precedent, the Fourth Circuit has explained that to determine whether a defendant has the minimum contacts with the forum state neces-

sary to confer jurisdiction, a court should determine whether the defendant "has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state." *Lesnick*, 35 F.3d at 945–46.

In this case, at a threshold level, the court notes that it was foreseeable to Boto that a substantial number of its artificial trees would ultimately be purchased by consumers in Virginia. Boto allegedly sells over $1.1 billion in artificial trees on an annual basis, and most of these trees are ultimately purchased by consumers in the United States. Further, Boto chooses to deal with two of this country's largest retailers, Wal–Mart and Target Corporation, each of which has a ubiquitous presence throughout the United States.[8] Boto has asserted that it "had no knowledge of the products being distributed by the Wal–Mart Stores throughout the Commonwealth of Virginia," *see* Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss, Ex. 1 ¶ 6, but this court cannot seriously entertain the suggestion that a manufacturer can supply products to Wal–Mart and Target Corporation without recognizing that its products will likely be purchased by consumers in, among other places, Virginia. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 613 (8th Cir.1994) (reasoning that "although [the defendant] claims to have had no actual knowledge that [a distributor] distributed fireworks into Nebraska, such ignorance defies reason and could aptly be labeled 'willful' ").

Of course, without more, the mere fact that its was foreseeable to Boto that its product would ultimately be purchased by consumers in Virginia is not sufficient to establish that it has the minimum contacts with Virginia necessary to confer jurisdiction. *See Lesnick*, 35 F.3d at 945. In this case, however, the plaintiffs have come forward with information indicating that Boto operates an Internet website that is accessible in Virginia and throughout the United States. It is readily apparent that one of the purposes of this website is to provide information and service to American consumers, including consumers in Virginia, who have purchased Boto's products. Consumers, for example, can retrieve information about the products they have purchased and complete warranty registration forms on the website. Moreover, it is at least arguable that an additional purpose of creating and maintaining such a website is to attract new customers and generate additional demand for one's products.[9] In light of the fact that it was foreseeable to Boto that a substantial number of its products would ultimately be purchased by consumers in Virginia and the fact that Boto maintains a website through which it makes available information and service to consumers in Virginia and throughout the United States, this court concludes that the plaintiffs have made a prima facie showing that Boto has created a substantial connection with Virginia by actions purposefully directed toward it. *See Asahi*, 480 U.S. at 112, 107 S.Ct. 1026 (O'Connor, J., plurality opinion) (explaining that "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, ... establishing channels for providing regular advice to cus-

---

8. Wal–Mart, for example, operated one hundred retail stores in Virginia at the end of fiscal year 2007. WAL-MART STORES, INC., 2007 Annual Report 63 (2007).

9. Without having had an opportunity to conduct full discovery, the plaintiffs have no way of knowing or projecting the number of Virginia residents who purchased Boto's products as a result of viewing Boto's website.

tomers in the forum State"). Accordingly, the plaintiffs have made a prima facie showing that the requirements of the minimum contacts test are met in this case.[10]

### 2.

■ Having determined that the requirements of the minimum contacts test are satisfied, the court must next consider whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice." *Lesnick*, 35 F.3d at 945. In making this determination, this court must take account of factors such as the following: "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." *Id.* at 946 (citing *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026). In *Asahi*, although the Justices disagreed as to whether the minimum contacts test was satisfied, the Court unanimously concluded that the exercise of personal jurisdiction over Asahi would be unreasonable and unfair. 480 U.S. at 113–16, 107 S.Ct. 1026. The Court cited the following reasons for this conclusion: (1) the burden on Asahi, an alien defendant, to defend itself in a foreign nation's legal system was severe; (2) the interests of the plaintiff and the forum state were slight, as the only claim pending against Asahi was one for indemnification, and the transaction upon which the indemnification claim was based took place abroad; (3) given the international

context of the dispute, it was necessary to take into consideration the policies of other nations whose interests would potentially be affected by the exercise of personal jurisdiction over Asahi; and (4) the policies of such other nations "will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 114–15, 107 S.Ct. 1026.

In this case, as in *Asahi*, it is clear that the burden on the defendant will be substantial. The plaintiffs and Virginia, however, have very strong interests in the exercise of jurisdiction over Boto. The plaintiffs named Boto as a defendant in this action and asserted numerous claims against it seeking redress for property damage that allegedly occurred because a product manufactured by Boto malfunctioned. The plaintiffs have a strong interest in being able to seek compensation from Boto for the alleged property damage. Also, Virginia has a strong interest in providing a forum in which Jones, one of its residents, and Admiral Pointe, an entity organized under its laws, can seek relief. *See First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1517–18 (4th Cir.1986) (noting that "Virginia has a strong interest in 'providing effective means of redress for its residents'" and that "the plaintiffs have an obvious interest in litigating in their home state") (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S.

---

10. The court notes that if the creation and operation of a website that makes information and services available to consumers in Virginia, when considered in conjunction with the fact that it was foreseeable to Boto that its products would be purchased by consumers here, were not sufficient to satisfy the minimum contacts test, the court would nevertheless find the minimum contacts test satisfied

based on the plaintiffs' prima facie showing that Boto engaged in a regular course of dealing that resulted in deliveries of substantial quantities and dollar amounts of products into Virginia on an annual basis over a period of at least several years. *See Asahi*, 480 U.S. at 122, 107 S.Ct. 1026 (Stevens, J., concurring in part and concurring in the judgment).

220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)): *see also Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir.2001) ("Texas has a significant interest in providing a forum for this action because the injured party, Lewis, is a Texas resident."); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989) (explaining that "Arizona has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief").[11] The court finds that these interests are substantial and outweigh the burden that the court will place upon Boto, an alien defendant, by requiring it to defend this action.

Given the international context in which this dispute arises, this court must also make a careful inquiry into the reasonableness of the assertion of jurisdiction over Boto. *See Asahi*, 480 U.S. at 115, 107 S.Ct. 1026. The plaintiffs have come forward with information indicating that Boto sells about $1.1 billion worth of artificial tress on an annual basis and that most of these products are ultimately purchased by consumers in this country. Given the magnitude of this revenue stream and the substantial profits that likely accompany it, the court cannot conclude that it would be unreasonable or unfair to require Boto to defend a product liability action in this country. *Cf. Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir.1994) ("In this age of [the North American Free Trade Agreement] and [the General Agreement on Tariffs and Trade], one can expect further globalization of commerce, and it is only reasonable for companies that distribute allegedly defective products through regional distributors in this country to anticipate being haled into court by plaintiffs in their home states."). The court, therefore, concludes that the plaintiffs have made a prima facie showing that the exercise of personal jurisdiction over Boto will not offend traditional notions of fair play and substantial justice.

### *IV. Conclusion*

Because the plaintiffs have made a prima facie showing that Virginia's long-arm statute authorizes the exercise of personal jurisdiction over Boto and that the exercise of such jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment, Boto's motion to dismiss for lack of personal jurisdiction is **DENIED**.[12] The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the plaintiffs and the defendants.

**IT IS SO ORDERED**

---

**11.** The court recognizes that the plaintiffs may also have a remedy against Wal–Mart. However, at this early stage of the litigation, the court cannot rule out that some substantial benefit may accrue to the plaintiffs as a result of Boto, the manufacturer of the purportedly defective Christmas tree, also being a defendant in this action.

**12.** *See supra* note 4.