## In re NATIONAL STUDENT MARKETING LITIGATION

v.

## The BARNES PLAINTIFFS, Appellants.

### No. 74–1858.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1975.

Decided Jan. 16, 1976.

Benjamin Gassman, Washington, D. C., for appellants.

Charles M. McCaghey, New York City, with whom John Logan O'Donnell, New York City, was on the brief for appellee National Student Marketing Corp. Mathias E. Mone, Washington, D. C., and Miles M. Tepper, New York City, were on the brief for appellee Peat, Marwick, Mitchell & Co.

Before LUMBARD,[*] Senior Circuit Judge for the Second Circuit, and TAMM and WILKEY, Circuit Judges.

LUMBARD, Circuit Judge:

Esther Barnes and 37 other appellants, onetime stockholders in National Student Marketing Corporation (NSMC), seek review of an order of the district court for the District of Columbia, dated July 1, 1974, denying their motion for exclusion from two class actions then pending in that court, *Garber v. Randall* and *Natale v. National Student Marketing Corporation,* six months after the opt-out period had expired. Judge Parker found, and we agree, that appellants failed to sustain their burden of showing that they had not received timely notice of class certification in the above actions and their inclusion therein. Accordingly, we affirm.

On December 7, 1971, appellants instituted suit in the Supreme Court of the State of New York, *Barnes v. Peat, Marwick, Mitchell & Co.,* alleging that they had been fraudulently induced to purchase 59,000 shares of NSMC stock at an artificially inflated price of over $800,000 by the false and misleading information issued by the defendants in violation of Sections 339–a and 352–c of the New York General Business Law and of Section 17 of the Securities Act of 1933. Three of the defendants in the *Barnes* action, who were also named parties in *Garber* and *Natale,* moved to dismiss or, alternatively, to stay the state proceedings citing the pendency of the already commenced federal suits and noting that,

> [a] motion for class action determination in the federal actions, largely unopposed by any of the parties thereto, has been argued in the District of Columbia court and is presently *sub judice.*

In response, the 38 Barnes plaintiffs insisted that the issues raised by their complaint were substantially less complex and more narrowly focused[1] and that, in any event, they would exercise their right to opt out of any class in which they were included. Defendants' motion was denied by the state Supreme Court on April 25, 1972[2] but, on appeal, the Appellate Division modified the lower court's order and granted the requested stay with leave to the plaintiffs to intervene in the "consolidated class actions" or to move to vacate the stay if they became prejudiced by subsequent developments.[3]

Shortly thereafter, on October 2, 1973, the *Garber* and *Natale* classes were certified by Judge Parker as including all those who purchased, exchanged or otherwise acquired NSMC Common Stock between April 1, 1968, and February 17, 1972. The Barnes plaintiffs do not deny that they fell within these boundaries, having purchased their NSMC securities in or about February, 1970. On October

---

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Appellants' state court complaint named fewer defendants and embraced a considerably shorter time frame than do the federal actions.

2. 69 Misc.2d 1068, 332 N.Y.S.2d 281 (Sup.Ct. N.Y.Co.1972). The court did, however, dismiss without prejudice appellants' cause of action based upon an alleged violation by NSMC of the Federal securities laws.

3. 42 App.Div.2d 15, 344 N.Y.S.2d 645 (1st Dept. 1973).

17, 18 and 23, 1973, pursuant to the mandate of the district court, 7,685 notices of class action determination were mailed to shareholders of record during the class period, as identified by the Riggs National Bank of Washington, D. C., NSMC's transfer agent. In addition, 3,777 notices were requested by and sent to brokerage houses and other financial institutions to forward to their customers who were the beneficial owners of NSMC stock. Moreover, notice was published in both the New York Times and the Wall Street Journal for two consecutive weeks, as required by Judge Parker. Each of these notices apprised the class members that they would be bound by the outcome of the federal actions unless they gave notice to be excluded from the class by November 30, 1973.[4]

Nevertheless, the Barnes plaintiffs remained silent until March 12, 1974, when a letter was sent to attorneys for NSMC and other defendants, expressing appellants' concern that "the activities on both sides in the . . . Federal action have been limited to pleading, venue and jurisdictional matters," and notifying defense counsel that unless judgment was reached in *Garber* and *Natale* by April 15, 1974, they would move to "vacate the stay of the Appellate Division." NSMC replied by letter dated April 1, 1974, informing the appellants that "[t]he *Garber* and *Natale* actions were declared class actions on October 2, 1973 and the opt-out period expired on November 30, 1973."

■ Yet it was not until May 29, 1974, nearly two months later, that appellants moved for exclusion from the federal classes, claiming that not a single one of

the 38 Barnes plaintiffs had received notice by mail or publication of the class certification in *Garber* and *Natale* and the deadline for opting out. This motion was denied by Judge Parker on July 1, 1974. In the interim, notice of a proposed settlement hearing in both *Garber* and *Natale* had been sent to all shareholders of record on April 22, 1974, using the identical computer printout utilized to mail out the prior class notices; the hearing had been conducted on June 14, and the settlement approved on June 25.[5]

■ Appellants contend that Judge Parker misallocated the burden of proof in placing upon the Barnes plaintiffs the responsibility for showing that they had not received timely notice of the class determinations, as they alleged. We disagree. Having filed their motion for exclusion six months after the expiration of the opt-out period, appellants were properly required to establish excusable neglect sufficient to outweigh the interest in the finality and repose of judicial orders. *Manhattan-Ward Inc. v. Grinnell Corp.,* 490 F.2d 1183 (2d Cir. 1974).

■ The record amply supports Judge Parker's finding that the Barnes plaintiffs failed to show by a preponderance of the evidence that they had not received the notice sent to all shareholders of record. Reasonable and orderly procedures were employed to identify and notify those NSMC stockholders composing the *Garber* and *Natale* classes. Gregory Caswell, a corporate trust officer of the Riggs National Bank, testified that in the late summer of 1972 the bank was requested by NSMC to prepare two sets of mailing labels for all shareholders of record during the class period.[6] These

---

4. No objection has been raised to the adequacy of the notice ordered by Judge Parker on October 2, 1973 as amended on October 12, 1973.

5. On June 25, 1974, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, a final judgment was entered approving the settlement between the federal class and NSMC. The effect of Judge Parker's July 1st order denying appellants' motion for exclusion from the class was thus to bind the Barnes plaintiffs by the results of a final judgment which had been filed a week earlier. Under the unusual circumstances of this case, the July 1st order

was properly appealable under 28 U.S.C. § 1291. We find no merit in appellees' contrary contention.

6. The labels were prepared in September, 1972, in conjunction with a motion to have the *Garber* and *Natale* actions, then located in the Southern District of New York, declared class actions. Resolution of that motion was delayed pending a decision of the Judicial Panel on Multidistrict Litigation which, on January 29, 1973, transferred both *Garber* and *Natale* to the District of Columbia. It was not until

labels, which included shareholders such as the Barnes plaintiffs who had both purchased and sold their stock during the relevant years, were delivered to counsel for NSMC in September 1972, and remained in his custody until the following October when they were used to address the notices of class determination. Postal receipts clearly establish that the notices were, in fact, sent.

■ These notice procedures appear to have been satisfactory for other class members who had commenced prior actions and who opted out of the class as required by the district court's orders of October 2 and 12, 1973. A small number of shareholders, unrepresented by counsel, also complied with the procedures for requesting exclusion from the class and three stockholders, although not requesting exclusion, had counsel enter an appearance on their behalf. The fact that the Barnes plaintiffs had instituted an individual action imposed no obligation upon the appellees to treat them as unique and direct specific notice to appellants' attorney that the federal classes had been certified. See, *Manhattan-Ward Inc. v. Grinnell Corp.,* supra at 1185–1186.

■ Appellants rely heavily on the fact that 31 of the 38 Barnes plaintiffs held their NSMC stock in street name and were, therefore, not included on the mailing list supplied by Riggs National. Appellees however demonstrated, and appellants do not contest, that the requisite notice was sent to all brokerage houses and other financial institutions holding NSMC stock. Nor is it disputed that these brokerage houses were provided with an additional 3,777 individual notices to mail to the beneficial owners of the stock which they held. Appellants

have not submitted affidavits from any of the above 31 shareholders attesting to the fact that they did not receive the notice. We agree with Judge Parker's finding that "reasonable and diligent efforts were pursued to extend the class notice to brokerage firms where shares of stock were held in the street names." [7]

Appellants did file affidavits, on the eve of the hearing, from six of the Barnes plaintiffs who held the NSMC stock in their own name and who affirmed that they had not received notice of the need to exclude themselves from the proposed class. None of these affidavits, however, forthrightly denied that the affiant currently retained an interest in or had in the past lived at the address to which the notices would, in the normal course, have been sent.[8] Significantly, only one notice was returned by the Post Office marked "Moved—not forwardable."

Even accepting, *arguendo,* appellants' contention that none of the 38 Barnes plaintiffs received notice of the federal actions, no explanation was provided as to why the motion for exclusion was not filed until two months after appellants' counsel was advised of the class determination and the November 30 deadline by letter from NSMC's attorney on April 1, 1974. Judge Parker's specific inquiry as to the reasons for this delay went unanswered at the hearing below.

■ We further note that having been informed during argument before the Appellate Division in June, 1973, that a motion for class action determination was then pending in federal district court, appellants' counsel was under a duty of diligence to keep abreast of events which so clearly affected the in-

---

the cases were actually transferred and the classes certified by Judge Parker on October 2, 1973, that the labels were used.

7. Moreover, appellants failed to indicate which brokerage houses held the shares of the 31 appellants whose stock was in street name so that it could not be ascertained whether those particular brokerage houses had requested additional notices, and, if so, to whom they had mailed them.

8. The affidavit of Jimmy Wright, which is representative of the others submitted, states that "[i]n October of 1973, I resided and still reside at 269 Somerset Drive, Hewlett, N.Y." In response to Judge Parker's question as to whether Mr. Wright had ever lived at 6202A Ridge Acres Drive, Cincinnati, Ohio—the address supplied by Riggs National—or whether he owned the property or maintained any contact with it, appellants' counsel replied that he had no knowledge and was not prepared to make any statement.

terests of his clients, *Manhattan-Ward Inc. v. Grinnell Corp., supra* at 1186.

On this record, we conclude that the district court committed no error in denying appellants' untimely motion to opt-out of the federal class actions.

Affirmed.