### In re BRAND NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION.

**This Document Relates To: All Cases.**

**Nos. 94 C 897, MDL 997.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 27, 1997.

### *MEMORANDUM OPINION*

KOCORAS, District Judge:

This case comes before the court on one plaintiff's motion to confirm its status as a

non-class plaintiff or, in the alternative, for an enlargement of time to deliver its election to opt out of the class. For the reasons discussed below, the former motion is granted, and the latter motion is deemed moot.

## BACKGROUND

The factual background of this multidistrict litigation is well-covered in the prior decisions of this court. In short, a number of actions have been filed by plaintiffs alleging, inter alia, a conspiracy among prescription brand name drug manufacturers to fix prices for such drugs and price discrimination through their use of a "two-tiered" pricing system. The Judicial Panel on Multidistrict Litigation has referred the cases arising from this pricing system to this court for pre-trial proceedings.

On November 15, 1994, this court certified a class consisting mainly of retail pharmacists that had purchased prescription brand name drugs directly from any of the defendants. On January 12, 1995, this court entered an Order authorizing the mailing and publication of Notice of the Pendency of Class Action (hereinafter "the Notice"). The Notice described the issues relating to the class action and informed class members that they had until March 10, 1995 to opt out of the action. The notice included a section that read as follows:

### IV. *HOW TO BE EXCLUDED FROM THE CLASS*

You may be excluded from the Class only upon specific written request, provided your request is delivered on or before March 10, 1995 to **In Re Brand Name Prescription Drugs Antitrust Litigation,** P.O. Box No. 837, Chicago, Illinois 60690–0837. The request for exclusion must clearly state your name and address and that you wish to be excluded from the Class. You need not state the reason for this request.

If you request exclusion, you will not be entitled to share in the benefits of any settlement or other recovery obtained in these actions and will not be bound by any judgment.

The notice also stated: "The pleadings and other records in this litigation may be examined and copied at any time during the regular office hours at the Clerk of the Court, 219 S. Dearborn St., 20th Floor, Chicago, Illinois 60604"

Randall's Food & Drugs, Inc. ("Randall's") is a Texas grocery chain which operates approximately 110 pharmacies in its stores. Given its home state, it is not surprising that Randall's describes itself as, and indeed is, "large." In early 1994, it became aware of some of the suits against drug manufacturers. On August 18, 1994, Randall's filed a complaint against 23 manufacturers in the Southern District of Texas. At Randall's request, this lawsuit—referred to by Randall's as the "First Lawsuit"—was consolidated into this MDL action in September, 1994. Randall's received the Notice, and decided that it did not want to participate in the class action. Thus, Randall's opted to attempt to follow the procedures for opting out of the class. However, the opt-out notice was not ready to be sent until March 9, 1995, the day before the deadline included in the Notice. In order to ensure that the election was timely received, Randall's decided to ship the election via Federal Express. There was one problem: Federal Express will not deliver to a P.O. Box. Because the Notice listed the clerk of this court as the place at which records could be examined, Randall's counsel assumed that the P.O. Box given as the address was also for the Clerk of the Court. Therefore, he gave the address of the Clerk of the Court to Federal Express, which did deliver the election to the Clerk on March 10.

On March 31, 1995, Randall's filed a second action—one it calls the Second Lawsuit—in the Southern District of Texas against the same 23 manufacturer-defendants as the First Lawsuit. The Second Lawsuit added four defendants and a number of additional claims. Randall's subsequently joined a large group of opt-out plaintiffs, called the "Duker Boies" plaintiffs, who were pursuing their claims against the 23 defendants. In August, 1996, a litigation support group working for the Duker Boies group prepared a list of chain stores with pharmacies, and noticed that Randall's was not on the opt-out list. In October, Randall's coun-

sel was informed of this, realized that it had not properly opted out, and filed this motion. Randall's seeks confirmation that it opted out of the class, or, in the alternative, an enlargement of time to properly deliver its election to opt out.

### DISCUSSION

Randall's makes two separate motions in the alternative. First, it seeks confirmation that it has opted out of the class. If we find that it has not opted out of the class, Randall seeks an enlargement of the time in which it may file its Election to opt out. Defendant–Manufacturers' position is that (1) Randall's has conceded that it has not yet opted out, and (2) it should not be granted an enlargement of time. We examine these motions separately.

I. Motion to Confirm Its Opt–Out Status

■ Randall's first moves for a confirmation that it has opted out of the class, pursuant to Fed.R.Civ.P. 23(b)(2)(A). Rule 23(b)(2)(A) provides that the notice to each potential class member should include notice that "the court will exclude the member from the class if the member so requests by a specified date...." The purpose of the rule requiring prompt notice of exclusion is to prevent parties from waiting to see if the adjudication in the .class action is favorable before deciding whether to join the class. *In re Four Seasons Sec. Law Litigation,* 493 F.2d 1288, 1291 (10th Cir.1974). The parties agree that the relevant "specified date" is March 10, 1995. This is the date which the Notice to Class Members included as the deadline by which members opting out of the class had to file notice of that decision. The question then is whether Randall's actions prior to March 10, 1995 were sufficient to signify a desire to be excluded from the class.

The standard for determining whether a party's actions constitute an election to opt out is not entirely clear. Wright & Miller argue that "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself...." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1787

(1986). The Tenth Circuit has adopted this approach, requiring only "[a] reasonable indication of a desire to opt out ...," and adopting Wright & Miller's preference for "flexibility in determining what constitutes an expression of a desire to opt out." *In re Four Seasons,* 493 F.2d at 1291 (quoting Wright, Miller & Kane). A number of other courts have adopted this preference for "considerable flexibility" and thus require only a "reasonable indication" of a desire to opt out. *See, e.g., Plummer v. Chemical Bank,* 668 F.2d 654, 657 n. 2 (2d Cir.1982); *Council on Social Work Education, Inc. v. Texas Instruments Inc.,* 105 F.R.D. 68, 71 (N.D.Tex. 1985) (citing 2 Newberg, *Class Actions* § 2475r (1977)). The Seventh Circuit has also commented favorably on the rule set forth in *Four Seasons. See Sanders v. John Nuveen & Co.,* 524 F.2d 1064, 1075 (7th Cir.1975) (Stevens, J.).

Randall's argues that its actions before the March 10, 1995 deadline are sufficient to satisfy this standard. These actions consist of two parts. First, in August, 1994, it filed suit against 23 manufacturer-defendants. This case was referred to this court in September, 1994. Second, on March 9, 1995, Randall's sent its Election to the Clerk of the Court, mistakenly believing that the Clerk held the P.O. Box to which elections were directed.

■ . The manufacturer-defendants contest neither the "reasonable indication" standard nor Randall's factual allegations. Rather, the defendants argue only that Randall's has "admit[ted] that it is currently a class member," by stating in its own motion that it "is not on the list of parties that have opted out because its Election was filed with the court rather than delivered to the post office box." (Def. Memorandum at 3; Randall's Motion at 2). This argument can be dismissed handily. Randall's admitted that it was not on the opt-out list; it did not admit that it *should* not have been included on the list. Stated differently, the question is whether Randall's actions prior to March 10, 1995 were sufficient to have rendered it an opt-out member—

whether or not Randall's was actually on a list of opt-outs is irrelevant.[1]

■ This diversion leaves us right where we started—on the question of whether Randall's actions were sufficient to signify an intention to opt out. We find that its actions were sufficient. The clearest evidence of a desire to pursue its own litigation against the defendants is the filing of its case against the same 23 defendants. Of course, Randall's took this action not once, but twice—once before the deadline for exclusion, and again three weeks after the deadline. These filings are certainly evidence of an intent to pursue its remedies independently, rather than as part of the class. This is not merely evidence in hindsight; the defendants against whom a Randall's complaint was filed (just three weeks after the opt-out deadline) can certainly be said to have received some notice of Randall's intent.

Additionally, we believe that the mistake made by Randall's counsel is an understandable one. We also note that, as the Tenth Circuit found, the purpose of the requirement of prompt notice of exclusion is to prevent parties from waiting to see if the adjudication is favorable before deciding whether to join the class. *In re Four Seasons*, 493 F.2d at 1291. There is no evidence of either an intent to wait until adjudication before deciding whether to opt out, nor is there a danger of Randall's benefitting in such a way. Therefore, in light of all of the attendant circumstances, Randall's had taken sufficient steps, prior to the deadline, to demonstrate an intent to pursue its case independent of the class action.

## II. Motion for an Enlargement of Time

In the alternative to its motion to confirm its status, Randall's also moves for an enlargement of time pursuant to Fed.R.Civ.P. 6(b)(2). In light of our determination that Randall's is not a class member, this motion is moot. Nevertheless, we will consider the merits of the motion.

■ The standard for an enlargement of time under Rule 6(b)(2) is "excusable ne-

glect." The Supreme Court recently examined the same standard in the context of a different rule. The Court held that the "neglect" portion of the standard is meant to include within the rule situations where the failure to meet a deadline is attributable to negligence. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 394–95, 113 S.Ct. 1489, 1497–98, 123 L.Ed.2d 74 (1993). The Court also held that the determination that the neglect be "excusable" is an equitable one, "taking account of all relevant circumstances surrounding" the failure to meet the deadline. *Id.* at 395, 113 S.Ct. at 1498. These circumstances include the danger of prejudice to other parties, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *Id.*

■ Randall's was almost certainly negligent in its conduct. This is not a bar to a Rule 6(b) enlargement. The question is whether the neglect was excusable. The factors are split in this case: (1) the danger of prejudice to other parties appears plausible but minor; (2) the delay is significant but its impact on judicial proceedings will be minor; (3) the reason for the delay is Randall's negligence, but that negligence is due in part to a somewhat unclear notice; and (4) Randall's certainly appears to have acted in good faith. We place the most weight on Randall's efforts (though perhaps misguided) to comply with the deadline, and with the arguable ambiguity in the Notice. In light of all of these factors, we find that Randall's neglect was excusable, and that it is entitled to an enlargement of time under Rule 6(b).

## CONCLUSION

For the reasons discussed above, Randall's motion to confirm its status as an opt-out plaintiff is granted.

---

1. It should also be noted that it is not clear whether Randall's is on the list of opt-outs or not. In its motion, Randall's says that it is not on the list. However, in its memorandum, Randall's says that it was on the list of opt-outs, but without an opt-out number or page number. (Randall's Memo at 6).