# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1264

_____

In re: General American Life Insurance   *
Company Sales Practices Litigation   *

  *

_____   *

  *

Lewis & Ellis, Inc.; Karen Shapiro,   *

  *

        Movants,   *

  *

James Henderson,   *

  *

        Appellant,   *   Appeals from the United States

  *   District Court for the

William P. Ludwig; Jeffrey L. Sippil;   *   Eastern District of Missouri

Darrell D. Cunningham;   *

John R. D'Alessandro; Bobby L. Chain;   *   [TO BE PUBLISHED]

Howard L. Zimmon, Trustee,   *

Howard M. Newburg Trust   *

U.T.A. 5/21/92, Individually and   *

on Behalf of All Others Similarly   *

Situated and representative capacities,   *

  *

        Appellees,   *

  *

     v.   *

  *

General American Life   *

Insurance Company,   *

  *

        Appellee.   *

William P. Ludwig; Jeffrey L. Sippil;   *
Darrell D. Cunningham;   *
John R. D'Alessandro; Bobby L. Chain;   *
Howard L. Zimmon, Trustee,   *
Howard M. Newburg Trust   *
U.T.A. 5/21/92, Individually and   *
on Behalf of All Others Similarly   *
Situated and representative capacities,   *
                                        *
            Plaintiffs,   *
                                        *
Carl Kelly Paving, Inc.; William Boje;   *
Katherine Zoghby; Gloria Boje;   *
Carol Singley Carroll;   *
L. Henry Gissel, Jr.; Preston Reeves;   *
Dennis Linsey; Ross J. Love, Jr.;   *
James L. Carroll; James N. Dickson;   *
Howard Patterson; Charles E.   *
Patterson; Pat's Auto Parts, Inc.;   *
Rahernat Amarshi; Amin Amarshi;   *
Cynthia Stanley; Billy McNurlen;   *
Patricia McNurlen; Mary Lewis;   *
Gregory Harris; Jack Leinenweber;   *
Roger E. White, Trustee,   *
Oliver Kitchens Family Trust;   *
David Garrett; William Gabriel;   *
Sule Alli; Thomas Crovella;   *
Larry Morris; Charles Hoskins;   *
George Linsey; Oliver Kitchens;   *
Tommy Rogers; Betty Rogers;   *
George Moore; Jon French;   *
Dr. Lindsey Jones, Jr.,   *

                    Appellees,               *
                                             *
        v.                                   *
                                             *
General American Life                        *
Insurance Company,                           *
                                             *
                    Appellant.               *
                                    _____

                    Submitted:  September 14, 2001
                            Filed:  October 16, 2001 (Corrected 10/22/01)


                                    _____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and BYE, Circuit Judges.
                                    _____

BYE, Circuit Judge.

        These consolidated appeals stem from a nationwide class action settlement between General American Life Insurance Company (GALIC) and more than 240,000 current and former policyholders.  The policyholders claimed that GALIC committed fraud and made material misrepresentations in the course of selling certain life insurance policies.  GALIC agreed to pay at least $55 million to class members in the form of additional policy benefits.

        In appeal 01-1264, James Henderson challenges the district court's[1] conclusion that the settlement fairly rewards the class.  We dismiss his appeal for lack of jurisdiction.  In appeal 01-1453, GALIC appeals from the district court's order

_____

        [1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

-3-

permitting several class members who tendered arguably defective opt-out requests to be excluded from the class. We affirm.

## I

In May 1997, the Judicial Panel on Multidistrict Litigation consolidated three policyholder actions filed against GALIC in various federal district courts. The Panel transferred the consolidated cases to the Eastern District of Missouri to resolve common pretrial proceedings. The consolidated class of plaintiffs in the Eastern District of Missouri included those who purchased GALIC whole life insurance policies between 1984 and 1996, and those who bought GALIC universal life insurance policies between 1982 and 1996.

The class of plaintiffs pursued several claims against GALIC. The class alleged that GALIC sold "vanishing premium" policies by misrepresenting that a policyholder's premium payments would cease over time, when, in fact, additional premiums would be required. In addition, the class alleged that GALIC "churned" policies by persuading policyholders to remove the cash value or assets of their existing life insurance policies to acquire replacement policies. The class also alleged that GALIC misrepresented to policyholders that some of its policies were actually investments, not life insurance.

GALIC and class counsel negotiated a settlement and presented a Stipulated Agreement to the district court on August 24, 2000. The district court provisionally accepted the Agreement in an August 28, 2000 order. In that order, the district court required GALIC to notify all known class members of the proposed settlement by mail and to publish notice of the settlement in 13 national and regional newspapers. GALIC was ordered to advise class members of their rights to opt out of the proposed settlement to pursue individual lawsuits. GALIC was also required to inform class members of a December 15, 2000 hearing at which the district court would entertain

objections to the settlement and consider its overall fairness, see Fed. R. Civ. P. 23(d)(2), (e).

The district court established precise procedures for GALIC policyholders who desired to opt out of the class.

> Any Class Member who wishes to be excluded from the Class must send a written request for exclusion to the Clerk of the Court at the address provided in the Class Notice and Publication Notice. Any such exclusion request must be sent by first-class mail, postage prepaid, and must be postmarked no later than November 8, 2000 (*i.e.*, 35 days before the date of the Fairness Hearing . . .). Exclusion requests must specify the particular Policy or Policies the Class Member wishes to exclude from the Class. If the proposed settlement is approved, any Class Member who has not submitted a timely and properly written request for exclusion from the Class for a particular Policy shall be bound as to that Policy by all subsequent proceedings, orders and judgments in these Actions . . . .

Appellant's App. 267. Class members seeking to opt out of the class were required to write to a claims processing center in Minneapolis, Minnesota established during the class action. They were ordered to send signed letters and to provide background information such as addresses, phone numbers, and GALIC policy numbers.

After the November 8, 2000 opt-out deadline passed, GALIC objected to numerous requests for exclusion that failed to comply with the district court's order.

- Twenty-nine class members (representing 47 GALIC policies) had filed opt-out letters that were received in Minneapolis on November 10, 2000, two days after the postmark cut-off date. Each envelope bore a postmark containing the month and year (November 2000), but none of these postmarks recorded a date, so it cannot be determined when these class members mailed their

letters. Most of these letters were mailed by an Alabama law firm using its own postage meter, prompting GALIC to hypothesize that the law firm purposefully omitted the date on which the letters were mailed to obscure their tardy filing.

- Six other class members (representing 7 GALIC policies) neglected to sign their letters personally. One such class member hand-wrote her opt-out request and printed her name. In the case of the remaining five class members, an attorney prepared the members' opt-out requests and signed his own name.

- Finally, GALIC asserted that one class member failed *both* to postmark his opt-out letter with a particular date in November 2000 *and* to sign his letter. The class member's Pennsylvania lawyer submitted and signed his opt-out letter.

Class counsel urged the district court to deem the ostensibly tardy opt-out letters to be timely filed. Lawyers for the class proposed that letters received November 10 in Minneapolis must have been postmarked no later than November 8 in Alabama. Class counsel also argued that attorneys were entitled to sign opt-out letters on behalf of their clients. Though class counsel offered no explanation or excuse for class members' apparently defective filings, counsel urged the district court to permit class members to cure any defects by submitting corrected requests for exclusion from the class.

The district court acknowledged that the class members "failed to comply with all the technical requirements of the class notice for [opting out]." Appellant's Add. 3. Despite the evidence of non-compliance, however, the court evaluated the class members' violations and determined that the "interests of justice" required their exclusion from the class. As to the ostensibly tardy opt-out requests, the court found that "from the evidence before me, I believe they were timely mailed." Id. Over GALIC's objections, the district court permitted these class members to opt out of the class settlement.

The district court formally approved the parties' settlement in the same order that permitted class members to opt out of the class. Under the terms of the settlement, a class member could accept a lump sum payment (in policy benefits) or choose to pursue the possibility of greater relief through a claims-processing system operated by plaintiffs' lead counsel. Class members choosing the latter option would have their claims scored by qualified claims processors based upon the extent of their losses and proof of GALIC wrongdoing. The scoring ranged from "three" (meriting the greatest relief) to "zero." GALIC describes a zero score as a sanction for rogue class members who present manifestly frivolous claims in cases where clear evidence demonstrates that GALIC acted properly. Zero scorers would not receive compensation from the settlement fund.

Henderson objected to the very existence of a zero score. He believed that the mere possibility—however remote—that a class member could receive no compensation was unfair. He moved to intervene in the district court and pressed this scoring objection as a reason for rejecting the proposed settlement struck by GALIC and class counsel. The district court overruled Henderson's objection and denied his motion to intervene in the action.

II

Henderson challenges the merits of the class settlement, but his challenge is quickly derailed by a jurisdictional impediment. Henderson neglected to establish party status in the district court, and he does not contest the district court's order denying him the status of a party on appeal. Because he is not a party, we dismiss his appeal for lack of jurisdiction.

"Absent" class members—those who are not named representatives of the class—may not appeal from a settlement approved by a district court because they are not (strictly speaking) parties to the action. See Marino v. Ortiz, 484 U.S. 301, 304

-7-

(1988) (per curiam). An absent class member who objects to a settlement's fairness must first intervene in the district court, see Fed. R. Civ. P. 24, and achieve the status of a party before challenging the settlement on appeal. Croyden Assocs. v. Alleco, Inc., 969 F.2d 675, 680 (8th Cir. 1992) ("We believe it is particularly appropriate to require intervention as a condition for appeal when a class member's challenge to the adequacy of a settlement is contrary to the view of all the other class members."). If the district court denies a class member's motion to intervene, the class member must successfully challenge the district court's denial of intervention on appeal to become a "party" entitled to contest the fairness of a class settlement. Cf. B.H. v. Murphy, 984 F.2d 196, 199-200 (7th Cir. 1993) (suggesting that an appellant who successfully challenges a district court's denial of intervention would be accorded party status).

Henderson is an absent class member, and so he is not a party entitled to appeal from the judgment entered by the district court. He moved to intervene in the district court in an effort to be recognized as a party, but the district court denied his motion as part of its omnibus December 2000 order. If Henderson contested the district court's denial of intervention, and we reversed, Henderson would be accorded party status, and he could then challenge the fairness of the class settlement.

In this instance, however, Henderson has not challenged the validity of the district court's order denying his motion to intervene. Henderson devotes the entirety of his brief to arguing the merits of the settlement, an issue we may not reach until we first decide that Henderson is a party (i.e., that he should have been permitted to intervene in the district court). Henderson neglects to identify the intervention question as an issue in his Statement of Issues, and he does not even mention the word "intervene" in his brief. By failing to raise the intervention issue, Henderson has waived the issue and effectively conceded his non-party status. He is therefore ineligible to challenge the district court's determination that the class settlement is fair. See Marino, 484 U.S. at 304 ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.").

In a reply brief, Henderson asserts that he did challenge the denial of intervention by designating the district court's December 2000 order in his notice of appeal. This contention misses the mark. For starters, "[i]t is well established that issues not argued in an opening brief cannot be raised for the first time in a reply brief . . . ." Republican Party of Minn. v. Kelly, 247 F.3d 854, 881 (8th Cir.), petition for cert. filed, No. 01-521 (Sept. 24, 2001). Even if we consider the argument in Henderson's reply brief, however, we remain unpersuaded. Henderson confuses an appellant's obligation to preserve issues for appellate review by designating them in a notice of appeal, see Fed. R. App. P. 3(c), with the requirement that an appellant explain and develop those issues in his brief, see Fed. R. App. P. 28(a)(9). Designating a court order in a notice of appeal simply does not suffice to mount a challenge to a district court's decision when an appellant omits all mention of that issue in his brief. Henderson never bothers to explain how, or why, the district court erred in denying him the right to intervene. Yet he is required—at bare minimum—to provide such an explanation. Cf. United States v. Wadlington, 233 F.3d 1067, 1081 (8th Cir. 2000) ("We will consider only those contentions which include citations to the authorities and parts of the record on which appellant relies.") (internal quotations and punctuation omitted), petition for cert. filed, No. 01-5228 (July 6, 2001).

In the absence of any argument that the district court improperly denied Henderson the opportunity to intervene in the class action, we conclude that he has waived the issue. He is not a party to the class action, and so he may not appeal the fairness of the settlement accepted by the district court. Accordingly, we dismiss Henderson's appeal.

III

In the second appeal, GALIC argues that the district court erred in permitting several class members to opt out of the class despite failing to follow various formalities specified by the court. We review the district court's decision for an

abuse of discretion.  See In re Wirebound Boxes Antitrust Litig., 993 F.2d 152, 154 (8th Cir. 1993).

A

We first take up the question of the purportedly tardy opt-out requests filed by 29 class members.  As a threshold matter, GALIC contends that these non-compliant class members were obliged to demonstrate "excusable neglect" for failing to comply with the district court's opt-out protocol, a showing these class members did not even attempt.

When a party fails to perform an act required by court order to be done within a specified time, he may convince a federal district court to overlook his untimely act by demonstrating "excusable neglect." See, e.g., Fed. R. Civ. P. 6(b), 60(b)(1).  Many circuits have applied this standard to untimely opt-out requests, requiring class members to prove that their delay resulted from excusable neglect in order to perfect their exclusion from the class.  In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132, 135 (2d Cir. 1998); In re Copley Pharm., Inc., No. 96-8054, 1997 WL 767763, at *3 (10th Cir. Dec. 11, 1997); Grilli v. Metro. Life Ins. Co., Inc., 78 F.3d 1533, 1538 (11th Cir. 1996) (per curiam); Silber v. Mabon, 18 F.3d 1449, 1455 (9th Cir. 1994); Williams v. Burlington Northern, Inc., 832 F.2d 100, 102 (7th Cir. 1987); In re Nat'l Student Mktg. Litig., 530 F.2d 1012, 1014 (D.C. Cir. 1976); see also Manual for Complex Litigation, Third 231 (Fed. Judicial Ctr. 1995) ("The court may, in its discretion, treat as effective a tardy election to opt out.  In exercising its discretion, the court should consider the reasons for the delay, whether there was excusable neglect, and whether prejudice resulted.").

We have not explicitly joined those circuits adopting an excusable neglect standard for tardy opt-out requests.  But language in one of our earlier cases suggests that we would likely follow suit.  See In re Int'l House of Pancakes Franchise Litig., 536 F.2d 261, 263 & n.1 (8th Cir. 1976) (per curiam) (IHOP) (finding that a district

court did not abuse its discretion in rejecting a class member's belated request to opt out of a class settlement because he failed to provide a reasonable explanation for his tardy filing and appeared to possess an improper motive for opting out after the court-ordered deadline). IHOP and the circuit decisions cited above suggest that we should be favorably inclined to GALIC's request that untimely opt-out requests be judged against an excusable neglect standard. Though we would be inclined to adopt that standard at this juncture, we ultimately find it unnecessary to take that step in this appeal.

Everyone agrees that the excusable neglect standard applies only when a party commits an *untimely* act. Thus, we must first ascertain whether the class members' opt-out requests were timely before we decide whether to embark upon the excusable neglect analysis. GALIC's argument proceeds from the premise that the class members' opt-out requests were filed out of time, but we have reason to question this premise. The evidence of record suggests that the class members' opt-out requests were timely submitted.

We begin with the language of the district court's August 28 order. That order demands that class members desiring to exclude themselves from the class inform the Minneapolis claims processing center by letter postmarked not later than November 8. The order does not condition timely response upon *receipt* of the letter. Rather, the timeliness of an opt-out request is determined by the *postmark date* its envelope bears.

Each disputed opt-out request arrived with a date-less postmark. The postmarks reveal only that the letters were mailed in November 2000. We know that each disputed opt-out letter arrived in Minneapolis on November 10, but we do not know the precise date upon which the postmarks were affixed to their envelopes.

The district court resolved this dispute by finding that these opt-out requests were in fact timely mailed, i.e., that they were postmarked on or before November 8. See Appellant's Add. 3 ("I believe they were timely mailed."). The court's expressed belief is akin to a finding of fact, which we would not disturb unless it were clearly erroneous. Given the highly deferential standard under which we review the district court's decisions concerning opt-out requests, Wirebound Boxes, 993 F.2d at 154 (abuse-of-discretion review), we must afford the court's determination fairly broad latitude in this case.

We are especially reluctant to disagree with the court's expression that the opt-out requests were timely mailed because it rests upon common sense and sound judgment. All but two of the disputed letters were mailed from Mobile, Alabama to the claims processing center in Minneapolis. The other letters originated in Jackson, Mississippi and Pittsburgh, Pennsylvania. It is reasonable to conclude that the time for delivery of regular mail between these cities exceeds one day. Indeed, it would be unreasonable, we think, to assume that the postal service delivers mail more quickly than this during snowy Minnesota winters. Even the Federal Rules of Civil Procedure presume a *three*-day mailing period by affording recipients of documents served by mail that additional period of time in which to respond. Fed. R. Civ. P. 6(e).

If mail delivery exceeded one day, then the disputed opt-out requests must have been timely postmarked (though the marks do not reflect it). The receipt of the disputed opt-out requests in Minneapolis on November 10 implies that the requests must have been postmarked and mailed no later than November 8—the court-ordered deadline. We therefore accept the district court's determination that the disputed opt-out requests were in fact timely filed. Because we agree that the disputed opt-out requests were timely, we need not engage in the excusable neglect analysis to which GALIC has invited our attention.

We hold that the district court properly permitted these policyholders to opt out of the class settlement.

B

Finally, we must consider the small group of class members whose opt-out requests GALIC challenges on the ground that they lack the members' signatures. Six of the seven class members who tendered unsigned opt-out requests had their attorneys prepare and sign their opt-out letters. Five of these six class members were represented by an Alabama attorney, Jubal Hamil. The sixth class member was represented by a Pennsylvania attorney, Vincent Longo. The remaining opt-out request was handwritten by an individual whose family-owned corporation held a GALIC life insurance policy.

GALIC points out that the court's order required class members to sign their opt-out requests, and notes that these class members did not do so. The district court agreed with GALIC that these seven class members failed to comply with the literal requirements of the court's order, which asked for a class member's signature, not an attorney's signature or a hand-printed name. GALIC urges us to hold that the district court abused its discretion by overlooking these class members' non-compliance. We decline to do so for two reasons.

First, we are not convinced that these class members violated the court's order. We acknowledge that the order required class members to sign their own opt-out letters and these class members did not. However, these class members had their attorneys sign their opt-out letters in their stead. While an attorney's signature did not comply with the literal wording of the court's order, there is little question that the attorney's signature complied with the court order as a matter of law. Both in Alabama, see Ala. Code § 34-3-21, and in Pennsylvania, Tucker v. Tucker, 87 A.2d 650, 656 (Pa. 1952), attorneys are empowered to sign legal documents on behalf of

-13-

their clients. Thus whatever the merit of GALIC's technical objection may be, the legal propriety of attorneys signing their clients' opt-out requests cannot be impugned.

Second, even if these class members violated the court's order by failing personally to sign their opt-out requests, we are persuaded that the district court acted within its sound discretion in overlooking the violations in the "interests of justice." See, e.g., Council on Social Work Educ., Inc. v. Texas Instruments Inc., 105 F.R.D. 68, 71 (N.D. Tex. 1985) (collecting cases holding that "'considerable flexibility' should be used in determining what constitutes an effective request for exclusion").

The class members' violations are in many ways analogous to a party's technical non-compliance with a local rule of court. It is well settled in our circuit that "the district court has considerable leeway in the application of its local rules." Silberstein v. IRS, 16 F.3d 858, 860 (8th Cir. 1994). "This court has previously stated that it is for the district court to determine what departures from its local rules of practice may be overlooked." Trundle v. Bowen, 830 F.2d 807, 809 (8th Cir. 1987) (citing Braxton v. Bi-State Dev. Agency, 728 F.2d 1105, 1107 (8th Cir. 1984)); see Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 611 n.2 (8th Cir. 1994); United States v. Ford 250 Pickup, 980 F.2d 1242, 1245 (8th Cir. 1992). We have also held that a district court may, in its discretion, elect not to sanction a party who does not comply with a discovery order. Hazen v. Pasley, 768 F.2d 226, 229 (8th Cir. 1985); cf. Dela Rosa v. Scottsdale Mem'l Health Sys., Inc., 136 F.3d 1241, 1243 (9th Cir. 1998) (order) (declining to impose sanctions on attorneys who failed to comply with circuit rules). Our cases plainly suggest that a district court may disregard certain hyper-technical violations of its orders. In the circumstances presented in this case, we do not believe the district court abused its discretion by permitting class members to exclude themselves from the class settlement despite failing to sign their opt-out letters in their own names.

IV


We dismiss James Henderson's appeal, and we affirm the decision of the district court permitting several class members to opt out of the class settlement.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.