**Leilani Jasinski DEMINT,**
**et al., Plaintiffs,**

v.

**NATIONSBANK CORPORATION,**
**et al., Defendants.**

Nos. 8:94–CV–995–T–23TBM, 8:94–
CV–2094–T–23TGW.

United States District Court,
M.D. Florida,
Tampa Division.

May 31, 2002.

Benjamin H. Hill, III, Brett J. Preston, William C. Guerrant, Jr., Hill, Ward & Henderson, P.A., Tampa, FL, John M. Newman, Jr., Jeffrey D. Ubersax, Jones, Day, Reavis & Pogue, Cleveland, OH, for defendants.

Scott Carter Ilgenfritz, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, Mitchell Willoughby, Robin M. Johnson, Willoughby & Hoefer, P.A., Columbia, SC, for movants.

*ORDER*

MERRYDAY, District Judge.

NationsSecurities moves (Doc. 231) for enforcement of the February 17, 1998, order and final judgment ("*Demint* final judgment") (Doc. 221). NationsSecurities seeks to bar Gary W. Kerley and Helen E. Kerley from prosecuting certain claims against NationsSecurities, which claims, according to NationsSecurities, are encompassed in and permanently enjoined by the settlement of the *Demint* class action pursuant to the *Demint* final judgment.

Presently pending in the United States District Court for the District of South Carolina is the Kerleys' action against NationsSecurities (Case No. 6:97–2089–24), which action the Kerleys filed on July 11, 1997. On November 3, 1997, the federal court in South Carolina stayed the Kerleys' action (pursuant to NationsSecurities' motion filed in the South Carolina action) pending arbitration of the Kerleys' claims in accordance with an arbitration clause in certain customer agreements between NationsSecurities and the Kerleys. On July 24, 1998, this Court enjoined the arbitration (pursuant to an emergency motion filed by NationsSecurities in this action) pending briefing by the parties concerning (1) whether the Kerleys "opted out" of the class as defined by the *Demint* final judgment; (2) whether and to what extent the *Demint* final judgment encompasses the Kerleys and their claims; (3) whether NationsSecurities' emergency motion constitutes an impermissible appeal from the arbitration panel's order denying NationsSecurities motion to dismiss; and (4) whether NationsSecurities waived its right to enforce the *Demint* final judgment. The parties vigorously contest each issue (Docs.241, 242).[1]

The time in which to "opt out" of the *Demint* class action expired on December 26, 1997. The Kerleys submitted their "opt out" letter (via facsimile transmission and overnight delivery) on January 7, 1998. Thus, the Kerleys failed to deliver a timely "opt

1. The parties agree on most if not all the relevant chronology but disagree about the legal significance of certain events. Points of disagreement with respect to chronology are immaterial to disposition of this matter.

out" notice. Indeed, the Kerleys contest neither receipt of seasonable notice regarding the *Demint* class action "opt out" deadline nor failure to deliver a timely notice of their "opt out." Further, the Kerleys contest neither the form nor the content of the notice (i.e., the Kerleys impliedly admit that the notice complies with the Federal Rules of Civil Procedure, complies with the Court's orders, and adequately informs recipients of the consequences of a failure to "opt out" of the *Demint* class action). Nonetheless, the Kerleys advance the alternative positions (1) that they effectively "opted out" of the *Demint* class action or (2) that excusable neglect relieves them from the consequences of their failure to deliver a timely "opt out" notice.

### Effective "Opt Out"

■ The Kerleys maintain that they effectively "opted out" of the *Demint* class action by instituting and vigorously prosecuting an action in federal court in South Carolina. However, pertinent and soundly reasoned authority prescribes that the pendency of a separate, individual action neither excuses a litigant from compliance with an applicable "opt out" procedure in a related class action nor obligates any party or court to treat the litigant as unique or different in any respect from other potential class members. *See, e.g., Sloan v. Winn–Dixie Raleigh, Inc.,* 25 Fed.Appx. 197–98 (4th Cir.2002); *Penson v. Terminal Transp. Co.,* 634 F.2d 989, 996 (5th Cir.1981); *In re Nat'l Student Mktg. Litig. v. Barnes,* 530 F.2d 1012, 1015 (D.C.Cir.1976); *U.S. West, Inc. v. Bus. Disc. Plan, Inc.,* 196 F.R.D. 576, 585–86 (D.Colo.2000); *Holmes v. CSX Transp.,* 1999 WL 447087, at *3–4 (E.D.La. June 24, 1999); *Manji v. New York*

*Life Ins. Co.,* 945 F.Supp. 919, 921–22 (D.S.C. 1996); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 164 F.R.D. 362, 370 (S.D.N.Y. 1996); *In re VMS Sec. Litig.,* 1992 WL 203832, at *3–4 (N.D.Ill. Aug.13, 1992); *Supermarkets Gen. Corp. v. Grinnell Corp.,* 59 F.R.D. 512, 514 (S.D.N.Y.1973).

■ The Kerleys assert that they "opted out" by litigating their claims apart from and notwithstanding the class action, i.e., by filing and actively prosecuting the South Carolina action both before and during the "opt out" period. Significantly, *Sloan, U.S. West,* and *Holmes,* the most recent cases to confront and reject the precise argument advanced by the Kerleys, emphasize that the mere pendency and continued prosecution of a separate suit, which the litigant instituted *before* commencement of the "opt out" period in a related class action, neither registers nor preserves a litigant's election to "opt out" of the related class action. *See Sloan,* 25 Fed. Appx. 197, at 197–98; *US West,* 196 F.R.D. at 585; *Holmes,* 1999 WL 447087, at *3–4; *but see McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62, 69 (N.D.Cal.1976) (filing of a separate suit *after* receipt of the class action notice but before expiration of the "opt out" period "constituted an effective expression of [the plaintiffs'] desire to opt out of" the class action).[2] Accordingly, the pendency and prosecution of the Kerleys' South Carolina action effects no "opt out" with respect to the *Demint* class action.[3]

### Excusable Neglect

■ Pursuant to Rule 6(b), Federal Rules of Civil Procedure, a party "may convince a

---

**2.** The Kerleys' rely exclusively on *In re Brand Name Prescription Drugs Antitrust Litig.,* 171 F.R.D. 213 (N.D.Ill.1997), for the proposition that pending litigation constitutes a effective "opt out." Although similar to the instant circumstances in some respects, *Brand Name Prescription* is materially distinguishable because the litigant in *Brand Name Prescription* sent an "opt out" notice by overnight mail, albeit to an incorrect address (i.e., the clerk of the federal court rather than the post office box established by the claims administrator), before the "opt out" deadline passed. To the extent that *Brand Name Prescription* endorses the theory that pending litigation alone communicates a litigant's intent to "opt out" of a related class action settlement, *Brand Name Prescription* runs fatally afoul of the preponderant authority.

**3.** The Kerleys suggest that their delivery of an "opt out" notice on January 7, 1998, (i.e., one day before the January 8, 1998, fairness hearing in the *Demint* class action) further supports the "effectively opted out" argument. The Kerleys suppose that the timing of delivery precludes the prejudice to NationsSecurities that otherwise arises from an untimely "opt out" notice. Unsupported by citation to authority, the Kerleys' position is an unpersuasive attempt to direct attention away from the Kerleys' admittedly delinquent action and toward NationsSecurities' purported failure to account at the fairness hearing for the Kerleys' delinquency.

federal district court to overlook [an] untimely act by demonstrating 'excusable neglect'." *In re Gen. Am. Life Ins. Co. Sales*, 268 F.3d 627, 633 (8th Cir.2001). A number of courts have examined excusable neglect in the context of an untimely class action "opt out" notice to determine whether a party has perfected its exclusion from a class. *See, e.g., In re Gen. Am. Life Ins. Co. Sales*, 268 F.3d at 633–35; *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 135 (2d Cir. 1998); *In re Copley Pharm., Inc.*, 1997 WL 767763, at *3 (10th Cir. Dec.11, 1997); *Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536 (11th Cir.1996); *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir.1994); *Williams v. Burlington Northern, Inc.*, 832 F.2d 100, 102 (7th Cir.1987); *Nat'l Student Mktg. Litig. v. Barnes Plaintiffs*, 530 F.2d 1012, 1014 (D.C.Cir.1976); *In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 216 (N.D.Ill.1997). A careful consideration of the parties' papers, the record, and the controlling authority confirms that the Kerleys fail to demonstrate excusable neglect principally because the Kerleys neither provide an explanation nor even proffer a reason for their failure to submit a timely "opt out" notice.

▋ Determining whether the Kerleys' conduct constitutes excusable neglect requires an analysis of the prevailing equities, "taking account of all the relevant circumstances surrounding the [Kerleys'] omission." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Pertinent factors include (1) the danger of prejudice to NationsSecurities; (2) the length of delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether the reason was within the Kerleys' reasonable control; and (4) the presence or absence of good faith by the Kerleys. *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489. Cases analyzing excusable neglect confirm that the factors prescribed by *Pioneer* necessarily overlap and are not precisely defined. However (and not surprisingly), the starting point and common denominator (indeed, the *sine qua non*) in every case employing an analysis of excusable neglect is an explanation of the reason for the delay.[4] In this respect, the Kerleys' assertion of excusable neglect is fatally incomplete and flawed because the Kerleys utterly fail to provide any explanation for their otherwise unaccountable delinquency in delivering an "opt out" notice.[5] The Kerleys fail to detail the events of neglect (if any) that caused the untimely notice and consequently fail to establish that the events of neglect are "excusable." In fact, about these events, the Kerleys reveal nothing.

At all relevant times, the Kerleys were represented by skilled and experienced counsel who prosecuted the Kerleys' claims against NationsSecurities. Nothing in the record demonstrates or even suggests that the delay resulted from circumstances outside the Kerleys' or their counsel's reasonable control. As noted above, the Kerleys

4. Stated in slightly different but clearly illustrative terms, "The Court may, in its discretion, treat as effective a tardy election to opt out. In exercising its discretion, the court should consider **the reasons for the delay,** whether there was excusable neglect, and whether prejudice resulted." Manual for Complex Litigation (Third) § 30.231 (1995) (emphasis added).

5. The Kerleys vigorously assert that they have acted in good faith with respect to both the South Carolina litigation and the *Demint* class action. However, the conspicuous omission of an explanation for the failure to file a timely "opt out" notice defeats any persuasive value of the Kerleys' assertion, and the record otherwise fails to confirm that the Kerleys acted either in good faith or in bad faith. Although not trivial, the Kerleys' twelve-day delay falls within a range that has permitted a finding of excusable neglect when present in conjunction with other factors demonstrating excusable neglect. *See, e.g., Silber*, 18 F.3d at 1451–52, 1455 (excusable neglect found in the instance of a seventeen-day delinquency); *Arthur Andersen & Co. v. Bank of America*, 493 F.2d 1288, 1289–90 (10th Cir. 1974) (excusable neglect found in the instance of an approximately fifteen-day delinquency); *compare In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d at 134–36 (no excusable neglect found in the instance of an approximately one-year delinquency). However, the Kerleys' somewhat conclusional assertion of a lack of prejudice to NationsSecurities effected by the delay in the "opt out" notice is dubious. Regardless, the Kerleys' failure to explain the reason for the delay in delivering the "opt out" notice—the failure to show facts arguably amounting to excusable neglect—largely moots any further inquiry into the other pertinent factors.

mount no challenge to the form or content of the notice of class settlement. Thus, without a predicate explanation of the events that occasioned the Kerleys' delinquency (i.e., the reason for the failure to deliver a timely "opt out" notice), the analysis of excusable neglect is effectively impossible. Stated differently, the absence of an explanation of the acts or omissions that resulted in the delinquent delivery of an "opt out" notice necessarily precludes an informed determination of whether the delinquent delivery is legally excusable.[6]

Excusable neglect (at least in circumstances not involving class action matters) is a flexible and somewhat forgiving notion. *See, e.g., Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1201–02 (11th Cir.1999) (finding excusable neglect for a one-month delay in responding to a motion to dismiss resulting from a clerical error and in absence of bad faith); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir.1996) (finding excusable neglect for a six-day delay in filing a notice for trial de novo following a court-ordered arbitration resulting from attorney miscommunication and in absence of bad faith or dilatory intent). Again, however, the analysis in both *Walter* and *Cheney* presumes a candid, straight-forward, and undisputed explanation by the defaulting party of the reason for the failure to comply with the pertinent deadline. The absence of such an explanation in this instance precludes a finding of excusable neglect.

### The Kerleys' Claims

■ Based on the plain language of the *Demint* final judgment and for the reasons stated in NationsSecurities' memorandum regarding the instant dispute (Doc. 241), the Kerleys' claims asserted in the South Car-

olina action are encompassed by the *Demint* class action settlement to the extent that those claims relate to the Kerleys' purchase of non-depository investment securities from NationsSecurities (or related entities) between August 25, 1991, and June 12, 1996. The allegations of the Kerleys' South Carolina complaint confirm that the Kerleys' claims are based on transactions involving non-depository investment securities (more specifically, "options"), which transactions fall squarely within the range of allegedly illegal conduct resolved by the *Demint* class action settlement. *See* "Order and Final Judgment" (Doc. 221), Feb. 17, 1998, at ¶ 1.1 (defining "Non–Depository Investment Security" by reference to 15 U.S.C. § 78c(a)(10), which explicitly includes "option" in the operative definition). The Kerleys mount no credible challenge to this conclusion. The Kerleys instead emphasize the individual nature of their claims, which position essentially fails to engage the pertinent legal question and merits no further treatment.

Because the *Demint* class action settlement encompasses the Kerleys' claims against NationsSecurities and because the Kerleys' failed to "opt out" of the class of claimants subject to the *Demint* class action settlement, the Kerleys are "class members" and the Kerleys' claims (to the extent that the claims relate to transactions between August 25, 1991 and June 12, 1996) are "released claims" as those terms are defined by the *Demint* final judgment.

### Waiver

■ The Kerleys' assertion that NationsSecurities waived the right to seek enforcement of the *Demint* final judgment is unpersuasive. None of NationsSecurities' acts before February 17, 1998, constitutes

---

**6.** A contrary conclusion necessarily implies that a court may excuse one party's omission to the material legal detriment of another party without understanding the conduct that occasioned the omission. This conclusion surely finds no support either in applicable legal authority or sound notions of logic, fairness, or common sense. On the contrary, relevant authority supports the somewhat obvious principle that a party asserting excusable neglect must first provide candid and forthcoming details about the pertinent history or, simply stated, must explain what happened. For example, *Advanced Estimating Sys.,*

*Inc. v. Riney*, 130 F.3d 996, 999 (11th Cir.1997), delineates the distinction between a mistake of fact (e.g., a miscommunication or clerical error), which may constitute excusable neglect, and a mistake of law (e.g., an attorney's misunderstanding of an applicable rule), which precludes excusable neglect. Of course, a reasoned determination of excusable neglect applying the distinction recognized in *Riney* is impossible absent an explanation of the events that occasion the omission from which a litigant seeks to be excused.

waiver because before that date no judgment existed, the enforcement of which could be waived. With respect to NationsSecurities' post-February 17, 1998, acts, the Kerleys' contention that NationsSecurities possessed a "mental attitude" that focused solely on arbitration is both strikingly speculative and factually undermined by NationsSecurities' concerted efforts to enjoin the Kerleys in this action. In fact, NationsSecurities has defended its interests aggressively and deployed formidable resources to that end. Evidence that NationsSecurities waived its right to mount a comprehensive legal defense is notably weak.

### Conclusion

■ In summary, the Kerleys are members of the *Demint* class subject to the terms and conditions of the *Demint* final judgment to the extent that the Kerleys assert claims against NationsSecurities related to transactions between August 25, 1991 and June 12, 1996. The Kerleys' motion to enlarge time is **DENIED.**[7] NationsSecurities' motion to enforce the *Demint* final judgment with respect to the Kerleys (Doc. 231) is **GRANTED.** Accordingly, Gary W. Kerley and Helen E. Kerley are **PERMANENTLY ENJOINED** from prosecuting claims resolved by and subject to the *Demint* class action settlement and the *Demint* final judgment.[8]

The Clerk is directed to forward a copy of this order to the Honorable Margaret B. Seymour, United States District Judge, District of South Carolina.

7. On or about July 22, 1998, the Kerleys sent a copy of a "Plaintiffs' Motion to Enlarge Time" to the Court. The docket for this action contains no entry with respect to that motion, and the original copy of the motion is not in the file. The Kerleys served a copy of the motion on NationsSecurities and NationsSecurities filed a response (Doc. 241). The motion largely restates the Kerleys' position with respect to excusable neglect and is due to be denied.

8. The All–Writs Act, 28 U.S.C. § 1651(a), provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." A federal court thus retains the power "to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). *See also Henson v. Ciba–Geigy Corp.*, 261 F.3d 1065, 1068 (11th Cir.2001) ("[A] district court has the authority ... to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the district court has retained jurisdiction."); *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir.1993) (noting that the All–Writs Act, 28 U.S.C. § 1651, "empowers federal courts to issue injunctions to protect or effectuate their judgments."); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1069 (11th Cir.1993) ("The All–Writs Act ... gives federal courts broad injunctive powers to protect their own judgments.... This power includes the authority to enjoin arbitration to prevent relitigation."); *Del Pino v. AT & T Information Sys., Inc.*, 921 F.Supp. 761, 765 (S.D.Fla.1996) (same). Federal courts may invoke the authority conferred by the All–Writs Act to enjoin parties from prosecuting separate litigation to protect the integrity of a judgment entered in a class action and to avoid relitigation of issues resolved by a class action. *See, e.g., VMS Limited Partnership Sec. Litig. v. Prudential Sec. Inc.*, 103 F.3d 1317, 1324 (7th Cir.1996); *White v. Nat'l Football League*, 41 F.3d 402, 409 (8th Cir.1994); *In re Y & A Group Sec. Litig.*, 38 F.3d 380, 381–83 (8th Cir.1994); *see also Henson*, 261 F.3d at 1071 (recognizing that although the All–Writs Act confers no independent jurisdictional basis for the removal of a state court action, the All–Writs Act nonetheless permits a federal court to enjoin a litigant from threatening the integrity of a judgment in a federal class action ("We do not, however, imply that the district court may not by injunction force [the separate action's] dismissal.")).